CREIGHTON and wife *vs.* JOSIAH INGERSOLL.

In an action for a partition, after the plaintiff's attorney had become entitled to certain fees for his services, and to over $100 for disbursements, the plaintiffs assigned their shares in the property to C. and wife, and one of the plaintiffs assigned also all costs and allowances that *he* might have, by the suit. The assignees claimed the right to substitute a new attorney, and continue the suit, without paying the former attorney any thing. The court refused to allow the substitution until the *disbursements* were paid. Subsequently, the property being sold, and the plaintiff's costs brought into court, *it was held* that the assignment did not transfer any costs or allowances to which the attorney was entitled, but only those belonging to the assignor.

It was *further held* that when C. and wife took an assignment of the action as it stood, and the benefit of the progress then made in it, they took it with the burthens then incident to it, one of which was the liability to have the costs then incurred deducted from the recovery by them. The amount of costs due to the former attorney, as adjusted previous to the substitution, was therefore directed to be paid to him, before paying over the fund in court to the plaintiffs.

APPEAL from an order made at a special term, directing the payment to the plaintiff, John Creighton or his attorney, of the sum of $259.01, for the costs and disbursements of the present and former plaintiffs, out of a fund in court arising from the sale of property in a partition suit.

*James L. Phelps, jun.* for the appellant.

*Wm. B. Aitkin,* for the respondents.

*By the Court,* MITCHELL, P. J. This action was first commenced by W. F. Ingersoll and wife, for the partition of certain premises. After their attorney had become entitled to certain fees for his services, amounting according to the present system, if the adjustable costs are the standard of his pay, to between $70 and $80, and had disbursed over $100 in the action, the then plaintiffs assigned their shares of the property to the present plaintiffs, and the latter insisted they had the right to substitute a new attorney and take advantage of all that had been done, without paying the former attorney any thing. This court, at general term, refused to allow the substitution until all the disbursements were paid. Since then the property has

been sold, and by the judgment all the costs of the plaintiffs were to be deducted from the fund before the shares should be distributed to the owners. The shares have been distributed, and the costs brought into court, in order that the court might determine who was entitled to them. The present plaintiffs produce an assignment to themselves of the share of the former plaintiff, dated December, 1851, but not proved until January 10, 1854, and by it W. F. Ingersoll, one of the former plaintiffs, assigns, besides his share in the lands, also all costs and allowances that *he* might have by this suit.

If the assignment could affect the rights of the attorney, it should be shown that it was executed before the attorney had acquired any better rights. But it does not purport to transfer all the costs in the suit, but only the costs and allowances that Ingersoll himself might have—not any which his attorney might have. It would be supposing both the assignor and assignees were intending a fraud, to suppose that they meant to assign costs to which the attorney was entitled. It could have been the assignor's only fair intention to assign what he was fairly entitled to, beyond what belonged to his attorney ; and that might be for some allowance that might be made to him, rather than to his attorney. The attorney was entitled to some compensation for his services. Under the old system the fee bill would be the standard of his compensation, so far as it provided for specific services. Under the code the party and his attorney are not restricted to that rule of compensation, but may show any other, agreed upon between them. It may be more or less than the adjustable costs, and whichever it be, the attorney is entitled to some compensation ; and nothing in the code professes to repeal the system under which the lawyer had a lien on the costs for his payment. The fund is in court, and the court can and ought to hold it for the benefit of the one equitably entitled to it. And as no one can have a more equitable title than the one by whose exertions the whole fund was created, the court should see that he is paid before any one else carries away the fund. That the attorney was not to have less than his adjustable costs appears from his having recovered a judgment against

his client for five hundred dollars, for his services. But that remains unpaid.

The assignees, when they bought, must have known that the attorney would have a claim for those costs. And when they took an assignment of the action as it stood, and the benefit of the progress then made in it, they took it with the burthens then incident to it, and one of these should be the liability to have the costs then incurred deducted from the recovery by them, when judgment should be obtained.

Let the sum of $79, the costs as adjusted before the substitution, be paid to James L. Phelps, Esq. the former attorney, and the rest of the fund in court to the plaintiffs. And let the order of the special term be modified accordingly.

[NEW YORK GENERAL TERM, September 3, 1855. *Mitchell, Roosevelt* and *Morris,* Justices.]