## SUPREME COURT.

### THE BOARD OF SUPERVISORS OF ULSTER COUNTY agt. JOHN C. BRODHEAD, and others.

A party has no right, without showing any cause except his *own will*, to substitute one *attorney* for another, without the payment of the *costs* earned. And this rule applies to a *board of supervisors*.

Where a board of supervisors, by their vote, discharge a firm of attorneys who have been acting in their employ (so far as their vote can discharge them) merely because the supervisors choose so to do, with a view to substitute another attorney for the board, they must pay the firm of attorneys their reasonable claims, which may be ascertained by a reference. And the attorneys are not bound to consent to a substitution or to deliver the papers upon which they have a lien, until the amount of their just demands is ascertained by the court or a referee, and paid them.

*Albany, Special Term, February* 25, 1873.

THIS is a motion in the above action and six other actions and proceedings in which the supervisors are either plaintiffs or defendants, to compel a substitution of Mr. Peter Cantine, as attorney for the supervisors, in the place of James M. Cooper & Marius Schoonmaker.

The motion is based on an affidavit of Mr. Cantine showing resolutions passed by the board at a meeting held on the 12th of February, inst. discharging said Cooper & Schoonmaker, and appointing Cantine in their stead, as attorney for the board.

Opposing affidavits are presented by Messrs. Cooper & Schoonmaker.

The facts set forth in the affidavits are sufficiently stated in the opinion.

P. CANTINE *in person and* N. C. MOAK, *for motion.*

MARIUS SCHOONMAKER *in person, and* I. PARKER *opposed.*

LEARNED, *J.*—This is a motion, made by the board of supervisors, who are parties, either plaintiff or defendant, in all these seven suits and proceedings, that P. Cantine, Esq., be substituted as their attorney. In one of the suits, Mr. James M. Cooper and Mr. M. Schoonmaker are the present attorneys for the board. In the others, Mr. James M. Cooper is their sole attorney, and Mr. Schoonmaker is counsel in all. The notice of motion further asks that Messrs. Schoonmaker and Cooper be required to deliver to Mr. Cantine all papers in said suits and proceedings, and all writings, papers and securities in their possession belonging to the county of Ulster.

There are, then, two distinct applications: 1st. That Mr. Cantine be substituted as attorney; 2d. That the present attorney and counsel deliver to him not only the papers in suits and proceedings, but also all securities in their possession belonging to Ulster county.

It should be said in the outset, that there is no charge made in the papers of any improper conduct, or of any negligence on the part of the present attorneys and counsel. Nor are they charged with any want of professional ability to take proper care of the interests of their clients. The motion is put solely on the ground that the supervisors, without assigning any reason, desire the change. The case is, therefore, free from any questions which might arise, if charges of any kind had been made or suggested against the present attorney and counsel. It comes simply to the point: What are the rights of a party who, without showing any cause except his own will, desires to substitute one attorney for another?

It was objected by the opposing counsel that the rule 15 requires that the change of attorney should be made by the order of a justice of the court and not otherwise; and that this should prevent the hearing of this motion at special term. I do not think, however, that rule was intended to deprive the court of its inherent control over this matter.

Its meaning must be, change cannot be made without an order either of the court or of a justice out of court. Still, it is important to observe that this rule provides that an attorney may be changed by consent, *" or upon cause shown, and upon such terms as may be just ;"* thus indicating that the change of attorney, unless by consent, is to be made only for cause, and upon terms. This rule took effect in October, 1858, having been adopted a few months before; and it certainly must be regarded as an authoritative declaration of the court upon this point from that time.

As this motion was very earnestly argued on each side, I have examined all the cases cited by both counsel on this point, and shall state them briefly.

*Brassington* agt. *Brassington* (1 *Simons & Stuart,* 456) did not involve the question of substitution or of the lien of an attorney on the papers in a cause. It held, only, that a solicitor who had a lien on a deed in his possession could not, as a witness, refuse to produce the deed.

A question more closely analogous to the present was, however, presented in *Bolton* agt. *Tate* (1 *Swanston,* 84). There the plaintiff's solicitor had died. His widow and administratrix refused to deliver the papers to the new solicitor till payment of costs. A motion was made to compel the delivery. The court said, "If a party chooses that his solicitor shall not proceed, it would be in vain for him to insist on taking papers out of the solicitor's hands till what is due to him was paid." And even in that case, where death had made a new appointment necessary, the motion to compel the delivery of papers without payment of costs was denied.

In *Cromwell* agt. *Poynton* (1 *Swanston,* 1), the solicitor had refused to act any longer for the defendant, the court ordered that the defendant might inspect and take copies of the deeds, &c., in the solicitor's possession. Thus, in that case, it was the solicitor who refused to act, not the client who discharged him.

In our own state the case of *Mumford* agt. *Murray* (1 *Hopkins*, 369), holds that a solicitor cannot be displaced without an order of the court; and Chancellor SANDFORD says, "Without this restriction a solicitor might be deprived of his lien for costs," thus indicating that the payment of costs would be made a condition by the court.

In *Stevenson* agt. *Stevenson* (3 *Edws. Ch.*, 340), Vice-Chancellor McCOUN held that the court would not deprive a solicitor of his lien on papers, nor, on the other hand, make it a condition of the change that the costs be paid.

*Haight* agt. *Halcomb* (16 *How.*, 173), and *Fox* agt. *Fox* (24 *How.*, 409), were cases in reference to an attorney's lien on a judgment, and did not touch the present question.

In *Trust* agt. *Repoor* (15 *How.*, 570), the substance of the opinion in the supreme court purports to be given. The attorney was charged with collusion with the opposite party, and the court is reported to have said that a client has a right to change his attorney at his own volition, whatever be his motives, whether a mere caprice or a substantial reason. The court ordered a substitution, and also ordered the delivery of the papers on payment of costs. This decision was made before the adoption of the rule above mentioned, that attorneys may be changed by consent, or upon cause shown.

There are two cases where no opinion is written, both purporting to be made by the same judge and both reported on the same page (5 *Robts.*, 611; *Halcott* agt. *Gill*, and *Wolf* agt. *Trochelman*). One states the right to change an attorney is an absolute right, except that the lien on papers will be retained. The other says that the change can only be made on such terms as may be just, which, in special cases, may involve the payment of the attorney's costs. It is seldom one can find on the same page so happy an illustration of the uncertainty of law. These cases may be said to neutralize each other.

In *Gardiner* agt. *Tyler* (36 *How.*, 63), a motion was made

to substitute an attorney for the plaintiff. A reference was ordered to report the amount due for costs, disbursements. and counsel, and that, on the coming in of the report and payment of the amount, the attorney be substituted. The reference took place and the report was made.

The plaintiff declined to pay, and abandoned his application for substitution. Subsequently a motion was made to compel the plaintiff to pay these costs, which was denied, the court holding, that, as the plaintiff had abandoned his application to change his attorney, no order could be made to compel him to pay. It seems, however, to have been admitted that he could not change his attorney without paying the costs, disbursements, and counsel of the former attorney.

In *Creighton* agt. *Ingersoll*, (20 *Barb.*, 541), a partition suit, the general term refused to allow the substitution of an attorney for the plaintiff until all the disbursements were paid; and subsequently, after the sale of the property, they required the costs of the former attorney to be paid out of the fund in court.

The case of *Hoffman* agt. *Van Nostrand*, (14 *Abb.*, 331), is important. A report had been made in favor of the defendants. The plaintiff appealed. The costs of the plaintiff's attorney not having been paid he suffered judgment to be affirmed by default. The plaintiff now applied for the substitution of a new attorney. The attorney opposed on the ground that his claim for services had not been paid. The courts say that a party has no right to change his attorney without leave of the court, and that the court will not allow the change until all the just claims of the attorney are discharged or secured. The motion was granted on the payment of the costs earned by the attorney.

That the same rule applies to corporations as to individuals, in this respect, is decided in *Parker* agt. *Williamsburg*, (13 *How.*, 250).

There remains another case cited by both parties and of high authority; *In re Paschal* (10 *Wall.*, 483). In this there was a motion in each of two cases; one to compel Paschal an attorney and counsellor to pay over certain moneys collected by him, and the other to strike his name from the docket as counsel of the state of Texas.

The first was opposed, on the ground that he was entitled to retain the money, or part of it, in payment for his professional services; and was denied.

The second was opposed on the ground that he had a contract as to that case, by which his payment was contingent on his recovery in the action, and that therefore he could not with justice be removed as counsel. And this motion was granted.

This second motion, therefore, which is analogous to a motion to substitute, was not opposed on the ground that there could be no substitution until the costs, which had been earned, were paid; for, by the terms of the contract nothing had been earned; but, as was said by the counsel for Paschal, it was opposed on the fact that the fee was to be contingent on recovery, and then by his removal he could not earn his fee, and the court in its decision says, that Paschal will, under the decision of the first motion, be able to retain the money in his hands and any papers and documents, until his claims are adjusted. That money, over and about his disbursements and his charges in the first suit was about $14,000 in gold.

There is a remark in the last case which is applicable to the present motion. "When," the court say, "there exists a technical barrier to prevent the respondent from instituting an action against his client, it would seem to be against all equity to compel him to pay over the fund in his hands." In the present case it seems to be settled that no action against the board of supervisors will lie. So they claim on this motion. There is, therefore, the more

reason that the court should not aid them in refusing to pay what they owe.

On this review of the case, it seems to me that with the exception of *Stimson* agt. *Stimson*, and, perhaps, of *Trust* agt. *Repoor*, the current of authority is uniform—that a party cannot insist, as a matter of right, upon a substitution of one attorney for another without the payment of the costs earned.

It is said that a man has a right to change his agent as he pleases. But the attorney is more than an agent. He is an officer of the court, subject to its summary control, and entitled to its protection. When he has faithfully conducted his client's suit, and no cause of complaint is shown, it is not unjust that the client, who wishes to dispense with his further services, should first pay for those already performed. To take a homely illustration : A man may select and may change his tailor ; but if he sends a coat to be mended he cannot take it away when the job is half finished and send it to another workman without first paying for the work already done.

On the other hand, when a client desires a change of attorney, and is ready to pay for past services, if the attorney were to refuse to fix the amount of his bill, or were to state some exorbitant amount, there would be, in such acts, evidence of a desire to wrong the client, which a court should not permit. Now, in the present case, the moving papers allege a demand for substitution and for all papers and documents, and a refusal to comply until the attorneys should be paid in full for their services. They also allege an inquiry as to how much the attorneys claimed, and a reply that they were unable to state. They do not aver any offer to pay what was justly due or any present readiness so to do. Indeed the whole argument for the moving parties proceeded on the theory that they ought not to be required to pay the costs as a preliminary to substitution, or to getting possession

of the papers. On the contrary, both of the opposing affidavits of Mr. Cooper and Mr. Schoonmaker say that they were not asked for the amount of their bills; that, previously to the interview, they had settled upon the gross amount of the charges, and were prepared to state the amount, if it had been asked. It is impossible, on these affidavits, to see that the present attorneys were throwing any unreasonable obstacles in the way of a substitution. They said they would not deliver any papers till they were paid. It is stated in the affidavits that Mr. Cantine said, "If we should differ as to the amount of your charges, I do not know that there is any way to fix it except to be audited by the board of supervisors," to which mode of adjusting their claims Mr. Schoonmaker and Mr. Cooper returned a positive refusal. It appears, therefore, clearly, that the position of the moving parties was not that they were ready to pay the claims of the present attorneys, either as they might state them or as the court or a reference might have them adjusted. But their position, on the contrary, was, that by their own vote they could change their attorneys in this court, and could require the court to compel summary delivery by these attorneys of the papers in their hands, while for the services already performed these attorneys were to have no remedy but an application for the audit of their claims to the same board of supervisors which had discharged them. It is undoubtedly true, that no action for a county charge can be maintained against a county or a board of supervisors. But I am not aware that a man, who has in his possession property of the county on which he has a lien, is obliged to surrender the property and trust to an auditing of his debt. If, usually, attorneys have a lien on the books and papers in their hands, or if, by the settled practice of the court, they cannot be discharged by clients without payment of their costs, then they must have the same rights even when they are so unfortunate as to have clients whom they cannot sue for their compensation.

The opposing attorneys further state their retainer by the board of supervisors, and briefly their services under this retainer. They aver that they have spent much time and labor, and that large amounts are due them therefor; that for such amounts they have a lien on the papers in their possession, and are not bound to consent to a substitution or to deliver the papers until these demands are satisfied, the amount to be ascertained by the court, or referee, as the court may direct. Although the protection thus afforded by the court to attorneys, is directly for their benefit, it is indirectly for the benefit of clients. It tends to ensure to attorneys, faithfully discharging their duty, the just compensation for their labor; and it thus makes them more earnest in their client's behalf. Certainly the court ought to see that its own officers, when charged with no misconduct, should be paid for their services, before that security is taken away which the control of a suit and the possession of papers gives to them. And it may be said in this connection, that in the present case not only do the affidavits make no charge of misconduct, but even the report of the committee of the board of supervisors does not suggest anything of that nature, or even any unwillingness on the part of the present attorneys to take any action required of them by the board.

They seem to have been discharged (so far as the vote of the supervisors can discharge them) merely because the supervisors chose so to do.

Assuming, then, that the mere will of these clients is sufficient cause for the change, it seems to me that the just terms indicated in the rule above mentioned and by authority must be the payment of the attorneys' reasonable claims. It must, therefore, be referred to some referee to take proof, and report the amount due Messrs. Cooper and Schoonmaker for costs, disbursements, and counsel, and on the coming in and confirmation of his report and payment to them of the amount found due, Mr. Cantine may be substituted, and the

papers, &c., in the present attorneys' hands must be delivered to him.  It is not necessary at this time to decide whether or not the lien of the attorneys, or the right to oppose substitution in general, or whether the claims as to such suit or proceeding must be confined to that suit.  No distinction was made in the argument.  The motion was general, and I cannot now separate their rights.

Ten dollars costs of opposing this motion must be allowed.