NELSON SANDBERG, PLAINTIFF *v.* THE VICTOR GOLD AND SILVER MINING COMPANY, ET AL., DEFENDANTS. FRANK KNOX, RESPONDENT, ARTHUR BROWN AND HENRY P. HENDERSON, CO-PARTNERS AS BROWN & HENDERSON, APPELLANTS.

*Appeals—Attorney's Liens—Substitution of Attorneys.*

During the pendency of an action, plaintiff assigned his cause of action, and the assignee moved the court for a substitution of other attorneys in place of appellants. The motion was resisted by appellants, who insisted that they should first be paid for their services rendered plaintiff. The court found that valuable services had been rendered by appellants. From the affidavit of one of the appellants, it appeared that the assignment was made by their client without their knowledge; that when appellants heard that judgment had been

taken in the action, they communicated with plaintiff, asking him if he had made the transfer; that plaintiff denied having sold or transferred the cause of action and stated that if any writing to that effect existed, it was fraudulent and void; that upon being shown the instrument of assignment, plaintiff admitted its execution and acknowledged his falsehood. It also appears that plaintiff continued to consult the appellants as his attorneys up to the time they learned of the assignment, and one of the appellants also stated on oath, that he was advised and believed that the plaintiff and his assignee had acted in bad faith and in fraud of the attorneys' rights. The foregoing does not appear to have been denied except that plaintiff, by affidavit, in general terms, said that he assigned the cause of action in good faith and with no intention to delay, hinder or defraud any person. The motion for substitution was granted. *Held,*—

1. The decision of the lower court in allowing substitution, was an appealable judgment.

2. There is no attorney lien for fees, on a cause of action before judgment.

3. The court will not, by an order of substitution, aid a litigant in perpetrating a wrong upon its own officer, but will withhold such order until reasonable compensation for services rendered and proper expenses are paid or secured to the attorney, and under the facts and circumstances of this case, it was error to make the order of substitution before such payment was made or security given.

(Decided November 14, 1898.)·

Appeal from the district court of Juab county, Hon. E. V. Higgins, *Judge.*

Action by plaintiff against defendants in which other attorneys were substituted for appellants. Reversed.

From the order of the court substituting attorneys appellants appeal. Reversed.

*Messrs. Brown & Henderson,* for appellants.

The statute, Secs. 117 and 118, requires notice to the attorney to enable him to present his claims if he has any, but the attorneys in this State have a lien on the cause for their fee. Such lien existed at the common law and instead of being changed by statute the effect of the statute has been to protect the attorneys still further than at the common law.

We refer to the following cases on that subject: *Wells* v. *Hatch*, 43 N. H., 246; *In re* Paschal, 10 Wallace, 483; *Rooney* v. *Railway Co.*, 18 N. Y. 368; *Ward* v. *Craig*, 87 N. Y., 550; *Ely* v. *Cook*, 28 N. Y., 372; *Marshall* v. *Meech*, 51 N. Y., 140; *Carpenter* v. *Ryter*, 1 Am. Law Register, (N. S.), 419; *Currier* v. *Railway Co.*, 37 N. H., 223; *Stratton* v. *Hussey*, 62 Me., 286; *Rice* v. *Garnhart*, 35 Wis., 282; *Curtis* v. *Richards*, 40 Pac., 57; *In re* Herman, 50 Fed., 517; *Gray* v. *Denhalter*, — Utah, ——; *Railroad Co.* v. *Wilson*, 138 U. S., 507.

Wherever in the course of the proceedings an order is made final in its nature, affecting the rights of persons, such person has a right of appeal. *Rooney* v. *Railway Co.*, 18 N. Y., 368, *Marshal* v. *Meech*, 51 N. Y., 140.

In *Curtis* v. *Richards*, 40 Pac., 57, an appeal was allowed in the name of the attorney from an order of substitution, though not a party of the original record. This was a case from the sister State of Idaho under a practice identical to our own.

*Hiram W. Gray, Esq., Messrs. Dey & Street*, and *Messrs. Booth, Lee & Gray*, for respondent.

This is not an appealable order. When the framers of Sec. 9 of the Constitution of this State used the terms "From all final judgments of the District Court there shall be a right of appeal to the supreme court," they intended to deny the right of appeal to the supreme court in

all other cases. *North Point Consolidated Irrigation Co.* v. *Utah & Salt Lake Canal Co.*, 14 Utah, 155; *Eastman* v. *Gurrey*, 14 Utah, 169.

A judgment to be final must dispose of the case as to all parties, and finally dispose of the subject matter of the litigation on the merits of the case. *North Point C. I. Co.* v. *S. L. C. Co., supra; Champ* v. *Kendrick*, 30 N. E., 635; *Masterson* v. *Williams*, 11 S. W. 531; *Schultz* v. *McLeon*, 18 Pac., 775; *Watkins* v. *Mason*, 4 Pac., 524; *State* v. *Templin*, 23 N. E., 697.

At common law an attorney had no lien, strictly speaking, for his compensation, on a judgment recovered by him for his client, for the reason that the only essential of a lien, possession was necessarily wanting. 3 Am. & Eng. Enc. of Law, 2d Ed., 450.

An attorney has no lien for fees and costs upon a judgment in favor of his client. *Hogan* v. *Black*, 66 Cal. 41; *Casey* v. *March*, 30 Tex. 185; *Forsythe* v. *Beverage*, 52 Ills., 268; *Hill* v. *Brinkley*, 10 Ind. 102; *Baker* v. *Cook*, 11 Mass. 238.

Before judgment it was very clear the plaintiff might settle the action and discharge the defendant without, or against the consent of his attorney, who had no lien on the cause for his fees: *Henchey* v. *Chicago*, 41 Ills., 136; *Getschell* v. *Clark*, 5 Mass., 309; *Pulver* v. *Harris*, 52 N. Y., 73.

### STATEMENT OF FACTS.

It appears that the action, out of which this proceeding has grown, was originally commenced by the plaintiff, Sandberg, against the Victor Gold and Silver Mining Co. and the National Bank of the Republic, of which bank, Frank Knox was president, to foreclose a lien on the property of the mining company. By agreement between the attorneys for all the parties to that suit, it was stipu-

lated that the trial of the action should be delayed, until after the determination of other litigation then pending between the Mining Co. and the bank. During that delay the plaintiff, Sandberg, sold and assigned his claim and cause of action to Knox, the president of the bank, one of the defendants in the case, which assignment was placed with the files in the action. Judgment was then taken in the name of the plaintiff, by default, without the knowledge of his attorneys, which judgment was afterwards, on motion of plaintiff's attorneys, the appellants herein, set aside by the court, the same having been entered in violation of the agreement between the attorneys for the parties to the action. The attorney for Knox then moved the court that Hiram Gray and Andrew Howat be substituted, as attorneys for the plaintiff, in the place of Brown & Henderson. This motion was resisted by Brown & Henderson, who insisted that the substitution ought not be made until they were paid for their services in the litigation. The testimony showed, and the court found, that the reasonable value of their services was $400, and that nothing had been paid them.

From the affidavit of Henderson, one of the appellants, it appears that the assignment was made by their client without their knowledge; that upon hearing of the judgment being taken, affiant communicated with plaintiff, asking him if he had made the transfer; that plaintiff denied having sold or transferred the cause of action, and stated that, if any writing to that effect existed, it was fraudulent and void; that thereupon affiant sent for Sandberg at Tintic, and they together proceeded to Nephi where the proceedings were had; that being there shown the instrument of assignment, Sandberg finally admitted its execution, and acknowledged that his former statement denying the assignment was a falsehood; that he had concealed the fact of the assignment from his attorneys;

that since the assignment to Knox, and up to the time of affiant's knowledge of it, the plaintiff continued to consult the firm of Brown & Henderson as his attorneys; that by reason of concealing from them the fact of the pretended substitution of attorneys, and assignment of the claim and cause of action, and denial thereof by plaintiff, they were put to large expense to protect what they believed to be the rights of their client, and to prevent fraud, protect their own rights and preserve their integrity as attorneys; and that affiant is advised and believes that the plaintiff and his assignee, have acted in bad faith and in fraud of the rights of Brown & Henderson.

The affidavit of Henderson does not appear to be denied except that Sandberg, by affidavit in general terms, said that he sold, assigned and transferred his cause of action to Frank Knox in good faith, and with no intent to delay, hinder or defraud any person.

The court granted the motion of Knox, the assignee, to substitute the attorneys, without imposing the condition that Brown & Henderson should first be paid, as insisted upon by them. Thereupon Brown & Henderson appealed.

After stating the facts as above, BARTCH, J, delivered the opinion of the court.

The respondent contends that the order made in this case is not a final judgment, and hence not appealable, and that Brown & Henderson were not parties to the original suit. While they were not parties of record in that suit, still they were counsel, and were parties to the proceedings wherein the order complained of was made. The same question was raised between practically the same parties in the case (decided at the present term) of the *Victor Gold and Silver Mining Company* v. *The National Bank of the Republic*, where the plaintiff and Brown &

Henderson were the appellants. In that case the contro-
versy on appeal was over a judgment for costs. On a
motion to off-set that judgment against other judgments
which had been obtained against the plaintiff, the trial
court granting the motion, ordered the judgment for costs
to be satisfied of record, holding that the plaintiff's at-
torneys, Brown & Henderson, who had advanced the
costs, had no lien on the judgment for the same. From
the order so made an appeal was taken, and this court in
deciding whether or not an appeal would lie, said: "That
decision as to those costs, and the rights of the plaintiff in
the original action and his attorneys, was a final judg-
ment, preventing either of the parties from ever recovering
them in any way. The order was made in a matter dis-
tinct from the general subject of litigation, and was final
in its nature, affecting only the parties to the particular con-
troversy. By that judgment or order the rights of the
appellant to the costs were absolutely determined, and,
therefore, they had a right to bring the cause to this court
for review." So, in this case, the order which constitutes
the basis of appeal, was made in a proceeding distinct
from and independent of the general subject of contro-
versy. It finally and conclusively, except on appeal, de-
termined the rights of the parties, as to the subject-matter
of such proceeding, and on the authority of the case re-
ferred to, we held that the order made was a final judg-
ment and appealable.

The appellants contend that in this State attorneys have
a lien, at common law, on the cause of action for their
fees. We do not think this contention well founded.
There is no such lien in this State at common law, nor
have we noticed or been cited to any statute creating such
a lien as is here contended for. To hold that a lien at-
taches to a cause of action before judgment would be to

place parties to controversies at the mercy of an attorney, for it would not be within their power to effect a settlement, or to in any way dispose of the cause of action, until the liens were satisfied. It would clothe the attorney with power to embarrass parties in any attempt at amicable settlement of suits, and prevent results which are encouraged by the policy of the law, which is that parties may adjust their differences at any time if they can. High in our regards, as we hold the legal profession, and much as we think attorneys ought to have all reasonable protection, against collusion and fraud of clients who may endeavor to deprive the attorneys of just compensation for services, we are not disposed, especially under our practice, where fees are left to the agreement of the parties, to favor a lien which would enable an attorney, independently of the wishes of his client, by exacting an unreasonable fee, to control the most important interests of the client and prolong litigation for his own benefit. It is always desirable, and in harmony with public policy, that parties to a controversy should be permitted to make a *bona fide* settlement of their difficulties, and courts are not inclined to favor a lien which may be used as an instrument to embarrass or prevent such settlement. It is very clear that before judgment an attorney has no common-law lien on the cause of action for his fees. *Pulver* v. *Harris*, 52 N. Y. 73; *Randall* v. *VanWagenen*, 115 N. Y. 527; *Shank* v. *Shoemaker*, 18 N. Y. 489; *Sherry* v. *Oceanic Steam Nav. Co.*, 72 Fed. Rep. 565; *Swanston* v. *Morning Star Min. Co.*, 13 Fed. Rep. 215; *Simmons* v. *Almy*, 103 Mass. 33; *Gretchell* v. *Clark*, 5 Mass. 309; *Nelson* v. *Tewksbury*, 2 Vt. 97; *Hobson* v. *Watson.* 34 Me. 20; *Kusterer* v. *City of Beaver Dam*, 56 Wis. 471.

If then the appellants are entitled to the protection,

which they now seek, it must be upon some other ground than that of a common-law lien on the cause of action. The next point of inquiry, therefore, will be whether the assignment of the cause of action by the plaintiff was made in good faith, or whether it was so tainted with fraud that the court ought not lend its aid, in the substitution of attorneys, when it would be likely to result in cheating the attorneys out of just claims for services rendered. That the appellants are able and skilled lawyers is not questioned. Nor is there any contention that they did not faithfully guard the interests of and perform their duties to their client. It appears from the record that the appellants commenced this action and prosecuted it, under and according to the plaintiff's directions and with his full knowledge and approval, until he sold and assigned his claim and cause of action to Knox. It is shown that the assignment was made secretly, without any knowledge, on the part of the attorneys, and that, after it was made, Sandberg continued to consult his attorneys professionally. When one of them finally heard of the transfer and that other attorneys were assuming to act, he communicated with Sandberg, who promptly denied that he had made the transfer, stating that if any writing to that effect existed it was fraudulent and void. Thereupon one of his attorneys sent for Sandberg, and together they proceeded to Nephi, the attorney bearing expenses of the trip, and there when confronted with the instrument of assignment, Sandberg admitted its execution, and acknowledged that his former statement denying the assignment was a falsehood. It was charged by affidavit that plaintiff and Knox, the assignee, acted in bad faith, in the matter and in fraud of the rights of the attorneys, and this charge is not denied by the assignee, so far as shown by the record.

Reference to the record, further in detail would seem unnecessary, for, under the facts and circumstances of this case, it is difficult to avoid the conclusion that the transaction was collusive and in fraud of the rights of the attorneys.    It savors very much of a case where an attempt is made to cheat attorneys out of their fees.    If the assignment was made in good faith, as claimed by Sandberg in his affidavit, why did he not at once inform his attorneys thereof, as an honest man would?    Why, when already indebted to them for services performed satisfactorily to him, still put them to more trouble and expense after the assignment?    Why, when asked about it, insist upon a falsehood and pretend that the writing was a forgery?    Surely such conduct is not an element of good faith, and cannot commend itself to a court of justice. Nor is it easy to explain the silence of the assignee.    Nor has there been an attempt to explain it, and yet, as president of the bank, which was a defendant in the action, he must have known that the appellants were the attorneys of his assignor, and that they had some rights as such attorneys.    If upon stepping into the shoes of his assignor, he had promptly notified them that their services in the action, would no longer be required, it would, at least, have had a tendency to relieve him from the imputation of bad faith.    It is argued, however, on behalf of respondent, that this is not a case of substitution, since the cause of action had been sold and assigned.    But the assignment created no change in the right of action.    The case was continued so far as the record shows in the name of the original parties, at least this could be done.    Knox simply succeeded to the rights of Sandberg, and received no other or greater rights.    Under the circumstances, it must be treated as a case of substitution, and the assignee so treated it by his motion to substitute attorneys.    No one,

in the absence of special agreement to the contrary, doubts the power of a client to discharge his attorney arbitrarily at any time, with or without cause, but, when he seeks to enforce such discharge without cause, by order of substitution of record, the court will not aid him in perpetrating a wrong upon its own officer, and will withhold such order, until reasonable compensation for his services already rendered, and proper expenses, are paid or secured to the attorney. This is not because of any lien of the attorney, for on a cause of action before judgment, he has none, but because the machinery of a court of justice can never be employed to perpetrate a fraud or wrong.

Where, therefore, the circumstances, leading to the application for substitution of attorneys, indicate bad faith, or collusion, or fraud, or an attempt to cheat the attorney of record out of his just claims, the court will not make an order of substitution until such claims are paid.

In Meacham on agency, Sec. 856, the author, after stating the rule that a client has the undoubted power to discharge his attorney at any time with or without cause, says: "The client, however, will not be permitted to discharge his attorney without cause, unless he first pays or secures the attorney's fees and charges, and the court will not enforce substitution unless this has been done."

In Creighton v. Ingersoll, 20 Barb. 541, which was an action for partition, after the plaintiffs' attorney had become entitled to certain fees for his services, and to a certain sum for disbursements, the plaintiffs assigned their shares in the property to C. and wife, and one of the plaintiffs assigned also all costs and allowances that he might have by the suit. The assignees claimed the right to substitute a new attorney, and continue the suit, without paying the former attorney anything. The court refused to allow the substitution until the disbursements

were paid. In passing upon the question of costs, the court said: "The assignees, when they bought, must have known that the attorney would have a claim for these costs. And when they took an assignment of the action as it stood, and the benefit of the progress then made in it, they took it with the burthens then incident to it, and one of these should be liability to have the costs then incurred deducted from the recovery by them, when judgment should be obtained."

So, in Board of Supervisors v. Brodhead, 44 How. Pr. 411, it was observed: "Certainly the court ought to see that its own officers, when charged with no misconduct, should be paid for their services, before the security is taken away which the control of a suit and the possession of papers gives them." 3 Am. & Eng. Ency of Law, 409. *Hoffman* v. *Van Nastrand*, 14 Abb. Pr. 336. *Sloo* v. *Law*, 4 Blatchf. (U. S.) 268. *Hooper* v. *Welch*, 43 Vt. 169. *Coughlin* v. *N. Y. C. & H. R. R. Co.*, 71 N. Y. 443. *Henchey* v. *The City of Chicago*, 41 Ill. 136. *Randall* v. *Van Wagenen*, 115 N. Y. 527.

We are of the opinion that the court, under the facts and circumstances of this case, ought to have withheld its aid in the substitution of attorneys, until the appellants were paid reasonable compensation for their services, or were secured for the same, and that it erred in making the order in the premises.

The judgment is therefore reversed, with costs, and the cause remanded with directions to the court below to proceed in accordance with this opinion.

ZANE, C. J. and MINER, J. concur.