## WHITE et al. v. AIKEN.

No. 14694. November 29, 1943. Rehearing denied December 10, 1943.

*Sidney T. Schell* and *O. C. Hancock,* for plaintiffs in error.

*G. Seals Aiken,* pro se.

GRICE, Justice. ■ A motion was made to dismiss the writ of certiorari, on nine grounds. Only two of them are sufficient to require discussion. One is that the motion for rehearing in the Court of Appeals did not embrace the same contentions that are made in the petition for certiorari. An examination of the application for certiorari and the record accompanying the same demonstrates that this ground is without merit. The second is, that the entire record in the Court of Appeals does not accompany the petition for certiorari, and that the petition does not contain or have attached thereto a statement enumerating the parts of the record that have been omitted, with sufficient words of description to identify them, as required by Rule 45 of this court. On July 19, 1943, the rules of this court respecting certiorari were amended with the purpose in view of making it less burdensome for counsel in presenting applications therefor. Rule 45 as amended does not require that the petitioner shall furnish with his application a copy of the entire record, but it does contain the following:

"The burden shall be upon petitioner to supply sufficient record to show clearly and fairly the error or errors complained of, as above required. Failure in this respect shall constitute ground for denying the application, or for dismissal of the writ if by inadvertence it was granted on insufficient record.

"For the information of the opposite party and of this court, the petition for certiorari shall contain or have attached thereto a statement enumerating the parts of the record that have been omitted, with sufficient words of description to identify them.

"If the court, after granting an application, should, on motion of the opposite party or upon its own motion, determine that additional record is desirable in order to do full and complete justice in the premises, the petitioner will be required to furnish same, and failure to comply with any order to this effect will be treated as ground for dismissing the writ."

It will be noted that the quoted portions of this rule contain three paragraphs. The first in effect states that failure of petitioner to supply sufficient record to show clearly and fairly the errors complained of shall constitute ground for denying the application or for dismissal of the writ, etc. The third paragraph in effect provides that the failure of petitioner to comply with an order to furnish such additional record as the court deems neces-

sary will be treated as a ground for dismissing the writ. The remaining paragraph of the quoted portion of the rule, though stating that "the petition for certiorari shall contain or have attached thereto a statement enumerating the parts of the record that have been omitted, with sufficient words of description to identify them," does not contain the further statement that such violation of the rule shall be treated as ground for dismissing the writ; but the requirement in this respect states that it is "for the information of the opposite party and of this court." There are many reasons why this requirement of the rule should be complied with; but the rule itself is a new one, and, until there has been an expression from this court construing the same, is susceptible of the construction that it was intended merely for information of the opposite party and of this court, and the absence of a compliance therewith was not intended to be visited with the penalty of dismissal as in the other two instances noted. As a matter of fact the application for certiorari in the instant case does contain all of the record necessary; and among the specifications is the original bill of exceptions, which itself contains a reference to each of the portions of the record which counsel for the respondents insist should have been included. The case before the Court of Appeals arose on a ruling on a motion in the nature of a rule brought by Lewis H. White against G. Seals Aiken, it being a motion by White to have Aiken's name stricken as attorney for him in certain designated litigation in Fulton superior court. A rule nisi was issued, and a hearing had thereon. The exceptions were to certain rulings on objections to evidence on that hearing, and to the order of the judge granting the motion to have Mr. Aiken's name stricken. Portions of the record which respondent insists should have been made a part of the petition for certiorari consist of numerous pleadings in the original cause. They were not parts of the record in the case heard by the judge, and on which he rendered the decision which was excepted to. The motion to dismiss the certiorari is denied.

■ No statement of the facts need be made since the opinion of the Court of Appeals supplies these. *Aiken* v. *White,* 69 *Ga. App.* 717 (26 S. E. 2d, 471). Mr. Aiken did not have a contingent fee. So far as this record shows, there was no agreement with Mr. White as to what the amount of the fee should be. It appears

that certain fees had been paid to him, and also that on the hearing before Judge Dorsey Mr. Aiken insisted that what he had received from Mr. White as fee was not sufficient on a quantum meruit basis. The Court of Appeals ruled: "No good cause being shown for the dismissal of the attorney, he had a right to prosecute the original suit to a conclusion, if for nothing else, to determine whether a recovery could be had and retain from the proceeds the fee to which he was entitled." This ruling follows the statement in the opinion: "We think that under the facts Mr. Aiken had a right to proceed with the original suit for accounting in the name of his client, at least to determine whether a recovery could be had, and to determine and retain a reasonable fee from the sums collected. He had a lien on the action and an inchoate lien on the sums recovered, if any, for whatever fee, if any, he was eventually entitled to;" citing the Code, § 9-613, and other authorities. The evidence was without dispute, on the showing before Judge Dorsey, that the client, so far as he could do so, had discharged Mr. Aiken, and it was the view of the trial judge that under the law, since Mr. Aiken did not have a contract for a contingent fee, a client has the absolute right to discharge his attorney and terminate the relationship at any time without cause; and hence he issued an order giving effect to those views. The Court of Appeals reversed that judgment. We have to determine whether, under the law as it exists in this State and the facts appearing in this record, Mr. White had the right to terminate the relationship existing between Mr. Aiken and himself, that of attorney and client.

The authorities are overwhelming to the effect that a client has the absolute right to discharge the attorney and terminate the relation at any time, even without cause. 7 C. J. S. 940, § 109, and cit.; Weeks on Attorneys at Law (2d ed.), § 250; 1 Thornton on Attorneys at Law, § 138. It is insisted, however, that under our Code, § 9-613, and particularly under subsection 2 thereof, no such right exists. The section deals with lien of attorneys at law. Subsection 2 declares: "Upon suits, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said suit, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied; and attorneys at law shall have the same right and power over said suits, judgments, and decrees, to enforce

their liens, as their clients had or may have for the amount due thereon to them." The Code of 1863, § 1987, declared the lien given by the common law to attorneys, and to others, is recognized by and may be enforced under the law of Georgia. Sections 1989 and 1990 of that Code were as follows: "The attorney's lien shall attach for his fees and for a general balance on all sums collected by him, and upon all property recovered by his services, and shall be superior to all other liens thereon. In claim cases the attorney causing the levy and prosecuting the rights of the plaintiff in fi. fa. shall be entitled to his fees from the proceeds of the property condemned, although older liens may demand and recover the proceeds from the immediate client of such attorney." "Parties cannot, by settlement between themselves, defeat the attorney of any lien or claim under contract with his client of which the opposite party had notice prior to the consummation of such settlement." Such was the law of Georgia until the act approved February 24, 1873 (Ga. L. 1873, p. 42), "to regulate the laws of liens in the State of Georgia." That act dealt with the liens not only of attorneys at law, but of many others. It introduced into our statute law the following contained in section 16 of the act, and which is now found in the latter portion of subsection 2 of section 9-613 of our present Code, to wit: "and attorneys at law shall have the same right and power over said suits, judgments, and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them." Lien laws are to be strictly construed, and one who claims a lien must bring himself clearly within the law. *Seeman* v. *Schultze,* 100 *Ga.* 603 (28 S. E. 378) ; *Hawkins* v. *Chambliss,* 116 *Ga.* 813, 814 (43 S. E. 55). There is nothing in that provision, or in the section from which it is taken, or in the act itself, which treats of the right of a client to discharge an attorney, or a denial of any such right. Its subject-matter is that of lien, and in a specific instance the right and power of attorneys to control suits as well as judgments and decrees in order to enforce their liens as attorneys. A fair construction of the language would seem to be that all that was intended to be said was, that so long as the relationship existed the attorneys, for the purpose of enforcing their liens, not only had the same right and power over judgments and decrees as their clients, but control over the suits. It meant nothing more. The act of 1873 which intro-

duced into our law the provision that attorneys at law shall have a lien on suits, as well as on judgments or decrees, dealt, so far as attorneys at law were concerned, not with the right of clients to discharge them, or with the denial of such right. Such a subject was foreign to the act. It deals only with the liens of attorneys, presupposing that the relation of attorney and client exists. The act means to say that, so long as that relationship continues, not only the lien exists, but in order to enforce their claims for fees the attorneys shall have the same right and power over such suits as their clients had. This may have been surplusage, since under the already existing law the attorney by virtue of the relationship has certain rights and powers with respect to the conduct of the case. His voice is controlling as to many matters, such as whether the case be continued or not, what questions to ask witnesses, acknowledgment of service on pleadings, and numerous other questions. See Clark v. Randall, 9 Wis. 135 (76 Am. D. 252), and cit. The language of the Code, § 9-613 (2), will not be held to mean to deny to the client the right to discharge his attorney.

In most jurisdictions it has been held that even though the attorneys have a contingent fee, the client nevertheless has the right, with or without cause, to discharge his attorney, "unless the power of attorney is coupled with an interest in the cause of action." "Generally speaking, this interest must be in the thing itself; the power must be ingrafted on an estate in the thing, and the power and interest must be united in the same person. The interest must be such a beneficial interest in the power itself that if the power were revoked, the attorney would be deprived of a substantial right." 5 Am. Jur. 281, § 36. The same text continues: "Thus, while an attorney employed on a contingent fee may be vested with such interest in the cause of action as will entitle him to intervene in the action to protect it after he has been dismissed without cause, he has no such interest as will prevent the client from discharging him." In this State, however, the rule is well settled that where the attorney has a contingent fee, he has certain rights in the conduct of the litigation which may not be taken from him by the client. *Coleman* v. *Ryan,* 58 *Ga.* 132; *Walker* v. *Equitable Mortgage Co.,* 114 *Ga.* 862 (40 S. E. 1010). There was no effort in the instant case by the client to dismiss or to settle the action. Therefore this opinion need not be clogged with citations

of authorities dealing with. those questions. It has been pretty generally held in those States where a client is permitted to discharge his attorney with or without cause, even where the attorney has a contingent fee, that nevertheless, before this can be done, it must be not only by consent of the court on a proper proceeding for that purpose, but also with a proviso that the client either pays to the attorney, or secures to him the fees he has already earned and to which he is rightfully entitled. See note to 5 Am. Jur. 285, § 44, and cit. There is also a long list of respectable authorities to·the effect that in all cases, whether the attorney's fee be contingent or otherwise, it is proper for the judge, before granting an order discharging the original attorney or substituting another in his place, to prescribe as a condition thereto some specific provision either by way of a present payment or by adequate security from the proceeds recovered, as ·compensation for the services of the attorney already rendered. See annotations to Echlin v. Superior Court, 124 A. L. R. 719, 725.

For· decisions recognizing the right of a client to discharge his attorney at any time for any reason which seems satisfactory to him, however arbitrary, but nevertheless holding that when a client discharges the attorney, if the latter be not at fault, the severance of the relationship must be or should be made on conditions which are fair to the attorney, see Matter of Dunn, 205 N. Y. 398 (98 N. E. 914, Ann. Cas. 1913E, 536) ; Curtis v. Richards, 4 Idaho, 434 (40 Pac. 57, 95 Am. St. R. 134) ; Gordon v. Morrow, 186 Ky. 713 (218 S. W. 258) ; Sanberg v. Victor Gold & Silver Mining Co., 18 Utah, 66 (55 Pac. 74) ; DuBois v. New York (C. C. A.) 134 Fed. 570; The Flush (C. C. A.) 277 Fed. 25; John Griffiths & Son Co. v. United States, 72 Fed. 2d, 466; Woodbury v. Andrew Jergens Co. (C. C. A.) 69 Fed. 2d, 49; In re Badger (C. C. A.) 9 Fed. 2d, 560; as well as the numerous authorities cited in the opinions in those cases. It is to be noted that several of the cases were from New York, and in at least one of them reference is made to a provision in the statute law of that State quite similar to that portion of our Code, § 9-613 (2), which in effect declares that attorneys at law shall have a lien on suits, as well as on judgments and decrees. For instance, in In re Badger, supra, it was said: "Under section 475 of the judiciary law of the State of New York (Consol. Laws, c. 30), the attorney has a lien, or counterclaim,

which attaches to a verdict, report, decision, judgment, or final order in his client's favor and the proceeds thereof, into whosesoever hands they may come, and the lien can not be affected by any settlement between the parties before or after judgment or final order. The court, upon the petition of the client or attorney, may determine and enforce the lien. The client's absolute right to discharge an attorney with or without cause has long been settled, but the discharge or change of attorneys does not in itself relieve or discharge the client from payment for past services." Those courts, it is to be observed, reached the conclusion that a client had the right to discharge his attorney without cause, notwithstanding a provision in the law that the attorney had a lien on his client's cause of action. The term "cause of action" would seem to be broader than the word "suits" as used in the Georgia statute. Nothing in the Code, § 9-613, constrains us to hold that a client has not the right to discharge his attorney.

The decision of the Court of Appeals is reversed, with direction. The judgment of the trial court should be affirmed, with the following direction: When the remittitur is received, before the trial court makes the judgment of this court its judgment, the trial court shall determine whether Mr. Aiken has already received reasonable compensation for the services rendered to his client; and if so, that the judgment striking his name from the case as attorney be affirmed. If it should be determined that the amount of fees already paid him is not sufficient in amount to be a reasonable compensation for the services rendered by him to the client at the time of his discharge, then the trial court will pass such order as will make Aiken secure for such balance. If in the opinion of the trial judge it be necessary to effectuate this latter purpose, a condition may be placed upon the order striking Aiken's name from the case.

Whether, had the attorney been employed with the fraudulent purpose of entrapping or disqualifying the attorney and in furtherance of such fraudulent purpose, or for the purpose of injuring him financially or otherwise, the court should add some further or different condition as to remuneration as a condition to having his name stricken from the case, is a question not made by this record. Nor are we here dealing with a situation where a definite sum had been agreed upon as a fee.

In addition to the authorities indicated above, see, on the question involved and related issues, the annotations in 7 A. L. R. 938, 16 A. L. R. 1159, and 124 A. L. R. 719; Todd *v.* Superior Court, 181 Cal. 406 (184 Pac. 684).

*Judgment reversed, with direction. All the Justices concur.*