# GRIMES *vs.* RAGLAND.

A residence upon, and the actual possession and occupation of one of two tracts of land conveyed to the defendant in the same deed, is not such a constructive possession of the other tract of which there is no actual occupation, as if continued long enough, will bar an action by the rightful owner under the statute of limitations.

Ejectment and motion for a new trial, in Paulding Superior court. Decided by Judge HAMMOND, August Term, 1858.

This was an action in the ejectment form by William R. Grimes, Benjamin H. Swearengin and Wilson Lumpkin, lessors, against W. Ragland, tenant in possession for lot of land No. 330, in the second district and third section of said county.

Plaintiff proved title to the lot in controversy, 330, founded upon a grant from the State to Grimes, then a deed from Grimes to Swearengin, and a deed from Swearergin to Lumpkin. Proved that defendant was in possession, and closed.

Defendant offered and read in evidence a deed from Elijah Ragsdale, to lots No. 330 and 331, dated 20th January, 1842, and proved that he went into possession under the deed soon after its date—that the lots were adjoining—that is, that his residence and improvements were on lot number 331, but there were no improvements on lot 330, until about 1852 or 1853, and no acts of ownership and possession except cutting timber, &c. The question in the case was, whether a possession of, and residence on, one lot of land, under a deed of conveyance of said lot with another, forming an entire settlement or farm, but without actual occupation or improve-

ment of that other, will constitute adverse possession as to the lot not occupied or in cultivation.

The court charged the jury that, "if defendant purchased and received a deed conveying the lot in dispute, together with some other lot, and he went into the actual possession of the other lot, and exercised acts of ownership over both lots as one tract or parcel, he was in possession of the whole, though he had not cleared or made any improvements on the lot in dispute, they being adjoining lots ; and this possession would be protected to the extent of the boundary called for by the deed under which he held and claimed."

To which charge plaintiff excepted. The jury found for the defendant, and plaintiff moved for a new trial, which was refused and he excepted, assigning as error said refusal.

CHISOLM & WADDELL, and FIELDER & BROYLES, for plaintiff in error.

IRVIN & LESTER, *contra.*

*By the Court.*—McDONALD, J., delivering the opinion.

This was an action of ejectment in the county of Paulding for the recovery of a tract of land known as No. 330, in the second district of the third section of originally, Cherokee county. The jury rendered a verdict for the defendant, whereupon the plaintiff moved for a new trial on three grounds. The first ground was, that one of the special jury who tried the cause was related to the defendant, Sanders W. Ragsdale, within the levitical degress of consanguinity, and was, therefore, not a competent juror to try the cause, which fact was unknown to the plaintiff until said cause had been submitted to the jury, and testimony introduced. This objection comes too late after a trial and verdict. Such objections to jurors may be

Grimes vs. Ragland.

easily ascertained by the use of a little diligence. The jurors themselves may be enquired of, if there are kinsmen of either party on the panel.

The next ground is the important one in the motion, and the point is easily extracted from the request of the court to charge the jury, and the charge of the court as given to the jury, viz : whether a residence upon, and the actual possession and occupation of, one of two tracts of land conveyed to the defendant in the same deed, is such a constructive possession of the other tract, of which there is no actual occupation, as if continued long enough, will bar an action by the rightful owner under the statute of limitations. The court below charged the jury that it would. The defendant resided on the tract of land adjoining that sued for. He claimed both tracts of land under one and the same deed. He had a hog pen on the land in dispute, and had rails split and logs cut on it, but stated that he was not in possession of it, except that he had paid taxes for it.

By our lottery system, lands are divided into tracts by number and district, and ordinarily, there can be but one grantee or one set of grantees, as when the grant is to orphans, so that a careful and guarded purchaser can find but little difficulty in ascertaining whether he has the rightful title. This consideration alone should lead courts to adhere to the strictest rules of construction in favor of the true owner. We have, in the judgment we pronounce, laid some stress upon this matter, though it was not necessary in order to sustain the case of the plaintiff in error. It is laid down in Adams on Ejectment, 592, that where a large tract of land is divided into lots, the possession of one lot adversely will not create a constructive adverse possession of the other parts of the tract, although claimed by the defendant under the same paper title. The author cites in support of the principle the case of Johnson *ex dem.* Ten, Eyck and wife vs. Richards, 6 Cowen, 623.

Grimes vs. Ragland.

"The law deems every man to be in the legal seizin and possession of land, to which he has a perfect right and complete title; this seizin and possession is co-extensive with his right, and continues until he is ousted thereof by an *actual* adverse possession." United States vs. Arredendo and others, 6 Peters' Rep., 743. This court has held repeatedly, that the owner of land in this State, having the true title, is in constructive possession of his wild lands wherever situated, and that a possession to be adverse to him so as to create a bar under the statute of limitations, must be open, notorious and continued. That is unquestionably the true and sensible rule. One reason which is assigned why a possession is held to be adverse to the rightful owner of land, is his presumed acquiesence in the right of the possessor. There can be no acquiescence without notice, and there can be no notice if the possession has not bsen *open, visible,* notorious and continued. Hence, the reason of the rule, that to create an adverse possession it must be open and continued. If it be not *continued,* another presumption comes to the aid of the true owner, and every legal presumption is in his favor, and that is, that the possessor, by relinquishing the actual possession acknowledges the superior title of the true owner. By his abandonment of the possession, the constructive possession of the true owner extends immediately to the premises, and it requires a new ouster or disseizin, to fix a starting point for the statute. On this point Ch. J. Shaw said, in the case of Blood vs. Wood, 1 Met. Rep. (Mass.) 528, "one point seems to be well settled, which is, that very strong acts of exclusive possession, such as building, inclosing or cultivating and that for a long time, and openly and notoriously, are necessary in order to create an actual ouster of the true owner, who has no notice of such acts." In regard to the premises now in dispute, if the owner had passed the land and examined it, at any time prior to the clearing of the field

in 1852 or 1853, he would have had no notice whatever of an adverse claimant, for the hog-pen, which, according to the usage of the country, is no evidence of ownership of the land on which it is put, the splitting of rails or the cutting of logs, which are the ordinary works of trespassers residing on contiguous lands, would not have advertised him in the absence of an actual occupant.

But again, here are two persons claiming title to the land. One has the actual, rightful, *bona fide* title; the other has a spurious title. Neither of them has the actual possession. In whom is the constructive possession? Surely in him who has the rightful *bona fide* title.

For the reasons here assigned, we think that the court erred in refusing to charge the jury as requested by plaintiff's counsel, and in giving the charge he did to the jury, and on that ground he ought to have granted a new trial.

Judgment reversed.