JACOB H. DAVIS and STEPHEN DAVIS v. LUTSON STROUD.

*Action to Recover Land—Evidence—Bond for Title—Possession—Trespass—Variance.*

1. Where possession is relied upon to perfect title to land, such possession must be shown either by proof of known and visible boundaries of the claim; by the definite calls in a deed, or by making certain, by evidence *dehors*, an ambiguous description in a deed.

2. In an ordinary action to recover land, the plaintiff must locate the property sued for with reasonable certainty, and then prove the defendant's unlawful possession or trespass thereon.

3. Where W. sold a tract of land to D., who, after conveying several parts thereof to other parties, abandoned his purchase, surrendered his evidence of title and gave up possession, and W. contracted to sell to H., the "residue" of the tract sold to D., and executed title bond in pursuance thereof : *Held*, (1) that in an action by those claiming under H. for possession against one alleged to be a trespasser, they must distinctly locate the "residue" by competent proof of the quantities of land sold by D. to other parties while in his possession ; (2) that the conveyances to such other parties being the best evidence of their boundaries, parol or secondary proof was not admissible, in the absence of evidence of the loss or destruction of such conveyances, and (3) that boundaries of such "residue" were identical with those alleged in the complaint.

This was a CIVIL ACTION, brought to compel a conveyance of a legal title by defendant to plaintiffs of a tract of land, and for possession, tried at the August Term, 1889, of the Superior Court of LENOIR County, before *Bynum, J.*

In the original complaint, the plaintiffs claim that they are the owners, and entitled to the possession, of a tract of land lying in Lenoir County, situated in Trent township, adjoining the lands of Stephen Davenport and others, bounded on the north by Lewis Davenport; on the south by Lewis Dismond and Jim Jones, and on the east by Jim Noble, and on the west by John Davenport, and known as the Hardy Davis tract of land, "beginning at a black gum in Opossum branch and runs north 28° west 44 poles to a stake; thence north 53° east 140 poles to a stake," and then by various specific calls set forth in the complaint (which need not be given) to the beginning. In their amended complaint the plaintiffs allege that, about the year 1845, the late John C. Washington gave and delivered to Hardy Davis (under whom they claim) a bond to make title *to the land described in the plaintiffs' original complaint, upon the payment of four promissory notes for one hundred dollars each,* which bond has been enrolled, and is made a part of the complaint. On the trial the plaintiffs offered in evidence the bond for

title, dated the 27th of December, 1845, executed by John C. Washington to Hardy Davis, in the usual form, binding the vendor to convey to Davis, on payment of four notes, falling due, respectively, on the 2d of January of the four years 1847, 1848, 1849 and 1850, a tract of land described as follows: " *The residue of a tract of land, which the said John C. Washington has heretofore sold to Spencer Davenport, lying in this county and adjoins the said H. Davis, York Howard and perhaps others, and is the balance only of said tract that said Spencer Davenport has not heretofore conveyed to sundry persons, and which residue the said Hardy Davis has this day purchased for four hundred dollars,*" &c.

It was admitted that plaintiffs, and those under whom they claim, went into possession under the bond from John Washington forty-one years before the trial, and remained on the land until 1871 or 1872.

Plaintiffs introduced as a witness, Ira D. Heath, Sr., who testified as follows: " I was living on land at the time Davis bought land from Washington ; Spencer Davenport was on land; he gave it back to Washington; could not pay for it. Davis told me he had bought it and requested me to leave it. Hardy moved on it forty-one or forty-two years ago; stayed on it till the war came on ; he had been back since; his family stayed there; no one has been in possession after Davis and his family went in until Stroud took possession; he had it some four or five years. Davenport gave up land to Washington. Davis told me he had bought from Washington. I moved out and Davis moved in; Davenport settled me on land ; he told me he had given up papers to Washington. this was just before Davis went into possession." The plaintiffs then proposed to ask witness if he knew the land described in the bond, for purpose of identifying the land as the land described in the complaint. Objected to upon ground that the description in the bond is not sufficient

to allow of identification.  Objection sustained, and plaintiffs excepted.

Plaintiffs here recalled the witness, who testified, after objection by defendant, that he was acquainted with the land sold by Washington to Davenport; that he never read the deed or heard it read.  "It adjoins Mr. Oliver Herring's land, William Davenport's and Spencer Davenport's; it contained five hundred acres.  Hardy Davis' land runs from 'Possum Branch to Marshall Tillman's; then to Richard Noble's; then back to where it began.  Don't know land sold by Spencer Davenport to William Davenport.  The 500-acre tract joins Spencer Davenport's old tract, William Davenport's, Oliver Herring's, Bryan Davenport's, Marshall Tillman's, Richard Noble's, and back to Spencer Davenport, and it includes the description in the complaint."

Defendant admitted that plaintiffs, and those under whom he claims, went into possession under bond from Washington forty-one years ago, and remained there until 1872 or 1873.

Plaintiffs then introduced one Boyd as a witness, who testified as follows: "Eight or nine years ago I rented the turpentine trees on land from Jacob Davis.  The land sold by Spencer Davenport to William Davenport was bounded on the west by Lewis Desmond, Irvin Jones, Lewis Ivey Stroud—this as far as I know.  I rented turpentine boxes and know boundaries that way."

Plaintiffs next introduced Stephen Davenport, who testified as follows: "Know the boundaries of the land sold by Spencer Davenport to William Davenport.  I have a deed calling for land of that description."

Witness was asked to describe the land.  Objection upon the ground that the deed is the best evidence.  Objection sustained, and exception.

Plaintiffs, after producing a great deal of testimony as to the occupancy of land by themselves and those under whom they claimed, and on other matters not material to the ques-

tion decided by the Court, closed their evidence, and the Court intimated to them that they could not recover because they had not identified the lands attempted to be described in the bond for title executed by John C. Washington to Hardy Davis by any competent testimony, and suggested to them to take a nonsuit.

The plaintiffs declined to take a nonsuit, and insisted upon their right to have a finding by the jury on the issues.

The Court instructed the jury to answer the issues submitted in favor of the defendant.

Plaintiffs moved for a new trial, assigning for error the rulings of the Court on the evidence, and the instructions given, which motion was denied, and the Court gave judgment for the defendant, from which the plaintiffs appealed.

No counsel for the plaintiffs.
*Mr. George Rountree,* for the defendant.

AVERY, J — after stating the facts: It is sometimes difficult to decide from such a mass of testimony and exceptions, as we have in this case, including even the objections entered for the defendant, the principle that governs a case. But we concur in the conclusion reached by the Judge below, that the plaintiffs are not entitled, in any aspect of the case, to recover, for reasons that seem to us obvious.

The burden was upon the plaintiffs to show a better title, derived from John C. Washington, either legal or equitable, for the land described in the complaint, than that of defendant; claimed from the same source. In order to make a *prima facie* showing of such title, it was necessary not only to offer testimony tending to identify the description contained in the bond for the title, by its boundaries, but tending to prove that those boundaries contained precisely the same land, covered by the courses and distances specifically set forth in the first paragraph of the original complaint,

and that the defendant was wrongfully in possession of some part of it when the action was brought.

It is admitted that the plaintiffs, and those under whom they claim, had lived for forty-one years on the land described in the bond. But title cannot be acquired by possession under a claim indefinite in its extent. The limits to which title is claimed to be matured, must be shown, either by the definite calls of a deed, by making certain by apparant proof an ambiguous description, or by testimony tending to establish the known and visible boundaries of the claim. There was no testimony that the Court could have submitted to the jury tending to identify the limits of the "residue" of the tract of land sold by Washington to Davenport, and not previously conveyed by the latter to sundry persons, although the door was open unusually wide for the admission of such evidence. Of course the defendant could not be shown a trespasser without first locating the land on which it was alleged to have been committed. But if the outlines of the tracts already sold by Davenport to sundry persons could have been shown, and apparent proof had also been offered to establish the boundaries of the conveyance from Washington to Davenport, and of the tract covered by that ambiguous description —"the residue"—it would have still remained to locate a trespass on it. *Gilliam* v. *Bird*, 8 Ired., 280.

Had the "residue" of land mentioned in the bond been located so as to cover the defendant's possession, there would have been still a fatal variance between the allegation and the proof, if there was no evidence to show that the boundaries referred to in the amended complaint, as containing the specific description of the land sued for, were identical with those located. *Carpenter* v. *Huffsteller*, 87 N. C., 273.

Affirmed.