## HARRISS et al. v. HOWARD.

1. Constructive possession of lands is where a person having paper title to a tract of land is in actual possession of only a part thereof. In such a case the law construes the possession to extend to the boundary of the tract. Hence adjacent owners may be in constructive possession of the same land, being included in the boundaries of each tract. In such cases no prescription can arise in favor of either; but the rights of the parties will be determined according to the superiority of the one title or the other aside from such prescription.

2. A devise of land under a will duly recorded may give color of title.

3. A devise in a will duly probated and recorded, whereby a testator left to his two sons "all of my lands," contained a sufficient description to operate as color of title to land in the county of his residence to which

he had recorded deeds, and which formed a part of a plantation known by his name, and of which he died in possession.

4. There can be no adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession.

5. Where one of two cotenants, each of whom owned a half interest in certain land, gave a mortgage to a third person, describing the entire interest in the land, and such mortgage was foreclosed and the land sold at sheriff's sale, after which the sheriff took the purchaser to the land, which was vacant, and, merely looking at it or pointing to it, informed the purchaser that he delivered it to him, this alone would not constitute such an ouster as would put the cotenant on notice and furnish a starting point from which prescription would begin to run against him.

6. There being some conflict in the evidence as to whether actual possession was taken by the purchaser, or to what extent, or for how long held, and as to the nature and character of possession claimed by the respective parties, it was error for the court to direct a verdict in favor of the defendant.

Argued February 27,—Decided August 17, 1906.

Ejectment. Before Judge Sheffield. Early superior court. October 11, 1904.

On March 12, 1903, T. B. Harriss and A. D. Harriss brought ejectment against S. T. Howard for lot of land number 143 in Early county. The evidence showed that Joshua Harriss died in possession of the land, and that what was known as the Joshua Harriss plantation comprised lots Nos. 101, 103, 137, 138, 139, 140, 142, 143, 178, 182, 183, 218, 219 in Early county. Recorded deeds to some of the lots (Nos. 142, 143, 139, and 140) were introduced in evidence. The lots immediately connected with this controversy are lot number 143 (the lot involved in the suit), the south half of lot number 178, which adjoins it on the west, number 142 which adjoins it on the south, number 139 which is east of number 142, and number 140 which is south of number 139. Joshua Harriss made a will which was duly recorded on September 2, 1873. The seventh item of it was as follows: "I give and bequeath to my two sons, H. J. Harriss and James Harriss, . . all of my lands and appurtenances thereto belonging." On November 8, 1902, H. J. Harriss made a deed to T. B. Harriss and A. D. Harriss, which was recorded. They claimed that they were entitled to an undivided half interest in land lot number 143, under the will of Joshua Harriss and this conveyance. There was also some evidence as to the purchase of the interest of the estate

of James Harriss after his death by one of the plaintiffs; but this need not be set out, as the substantial controversy is as to an undivided interest. The defendant claimed under a foreclosure and sale under a mortgage given by James Harriss, which included not merely a half interest in lot number 143, but all of it, and the south half of number 178. He also set up prescription under the sheriff's deed.

On December 31, 1877, James Harriss (who presumably was the same person as J. M. Harriss) executed to J. J. Bird a mortgage duly recorded and covering land lot number 143 and the south half of land lot number 178. It was regularly foreclosed and the land was sold by the sheriff, his deed being dated June 5, 1883, and duly recorded. The defendant testified that the sheriff put him in possession, and that he had since been so; that there were then no houses on the land and there was no cultivation of it; that the sheriff rode out to the land with him and put him in possession by showing it to him and turning it over to him. On the subject of occupancy he further testified: There were no houses or cultivation or other occupation of the land until about 1892, when he built a house on the south half of lot number 178, and his tenant moved into it and cultivated some patches on that lot, but there was no actual possession of lot number 143. In 1895 and 1896 another person became tenant and had a patch of about twenty acres on the eastern portion of lot number 143 and a small patch on the western portion of it, but lived and farmed chiefly on lot number 178. In 1897 the land was sold to one Munger, but after keeping it for two years he failed to pay for it, and surrendered his possession and bond for title. He lived on the south half of lot number 178, built a plank fence on lot number 143, and cultivated a portion of it. Each year after Munger left, the place was rented out. In 1899 the tenant cultivated some of the land on lot number 143. In 1900 defendant could not say positively that the tenants cultivated any part of lot number 143. In 1901 the tenant did so. In 1902 the witness could not say that any part of lot number 143 was cultivated. All of these tenants lived on the south half of lot number 178, and had the option of cultivating lands upon lot number 143 if they desired to do so. The occupancy of the house and field in the south half of lot number 178 has been continuous.

One of the plaintiffs testified in regard to the possession, in brief,

as follows: The lot in dispute was a part of his grandfather's plantation. After the death of the latter the place was turned out into old fields, and there were no houses, fences, cultivation, or other acts of actual possession exercised over it by any one until Munger built a fence and cultivated a small field on it in 1897. This fence remained about a year, and was torn down; and while tenants of the defendant had cultivated patches on the lot in dispute occasionally since 1898, there had never been any continuous occupancy of it, nor had there been any cultivation of it by any one during several of the last seven years prior to the bringing of this suit. When Munger built the fence he was notified that H. J. Harriss owned a half interest in the lot, and so also was the defendant. Neither H. J. Harriss nor these plaintiffs claimed any interest in lot number 178. There had never been any division of the plantation except as to lots numbers 178 and 183, in which H. J. Harriss sold his interest. After H. J. Harriss conveyed the land to the plaintiffs in 1902, one of them went into possession of a portion of it and cultivated it during the years 1903 and 1904. H. J. Harriss had a tenant who cultivated land on lot number 140 for ten years or more, and prior to that time he had other tenants. As to lot number 142 which adjoined the land in dispute, the cotenant of H. J. Harriss, namely J. M. Harriss, in his lifetime, and his children after his death, cultivated a field continuously, with the exception of a few years, not more than four or five, ever since the death of Joshua Harriss up to about four years before the trial, when the plaintiffs bought the interest of the estate of J. M. Harriss, he having died, and they have been in possession of and cultivating the field on number 142 ever since.

On the close of the plaintiff's evidence, the judge directed a verdict for the defendant, and the plaintiffs excepted.

*A. G. Powell,* for plaintiffs.    *W. D. Kiddoo,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. As to the actual possession of the lot of land involved in the controversy or any part of it, there was clearly a conflict in the evidence. In addition to this, the plaintiffs claimed that Joshua Harriss devised his lands to his two sons; that they had acquired the interest of one of these sons; and that they and those under whom they claimed had been in continuous possession of lot number 142 by being in actual possession of some of the adjoining land

which formed a part of the Joshua Harriss plantation. The defendant claimed a prescriptive title under a sheriff's deed which included lot number 143 and the south half of lot number 178, which adjoins it. Aside from the contention as to possession of a part of lot number 143, he contended that he had been in actual possession of the south half of lot number 178, and that thus his prescriptive title had ripened. If the conflict in the evidence in regard to actual possession at times of a part of the land lot in dispute is material, the presiding judge of course erred in directing a verdict. If this be disregarded, under the undisputed evidence the will under which plaintiffs claimed and the deed under which defendant claimed each covered the interest in controversy; and each party asserted constructive possession of the particular lot or interest in it by reason of possession of land claimed to be included in his paper color adjacent to that in controversy, or forming with it part of a general tract. It is true that lot number 140 does not immediately adjoin lot number 143, but there is enough evidence in regard to it and lot number 142 to indicate the case just stated.

Section 3586 of the Civil Code is as follows: "Constructive possession of lands is where a person having paper title to a tract of land is in actual possession of only a part thereof. In such a case, the law construes the possession to extend to the boundary of the tract. Hence, adjacent owners may be in constructive possession of the same land, being included in the boundaries of each tract. In such cases, no prescription can arise in favor of either." *Grimes* v. *Ragland,* 28 *Ga.* 123, 127. Outside of this State, it has been declared by several courts that "Where two patents, grants, surveys, deeds, or other conveyances are conflicting, each including land which the other purports to convey, and the senior claimant is in actual possession of some part of the land lying within his grant, but not within the interlock, possession by the junior claimant of a part of the tract included in his conveyance outside of the interlock or lap gives him no constructive possession of lands lying therein." 1 Cyc. 1131, and citations; White v. Burnley, 61 U. S. (20 How.) 235; White v. Ward, 35 W. Va. 418; Elliott v. Cumberland Coal & Coke Co., 109 Tenn. 745. A devise of land under a will duly recorded may give color of title. 1 Cyc. 1099, and note. On the subject of color of title see *Street* v. *Collier,* 118 *Ga.* 470.

As to the sufficiency of the description of the land in the will, it is said in *Crawford* v. *Verner,* 122 *Ga.* 816 (referring to a deed), "And where it can be gathered from the words employed in a deed that the intention of the grantor was to convey the whole of the tract owned by him, even a vague description of the same will suffice, if by competent parol evidence its precise location is capable of ascertainment and its identity can thus be established." It was held that descriptive words very similar to those now considered were sufficient. *Flannery* v. *Hightower,* 97 *Ga.* 592(5), 608; *Priester* v. *Melton,* 123 *Ga.* 375. Descriptions quite as general as that here involved have been sustained, where the property could be identified and the description applied to it by parol evidence. See Jones on Real Property, § 348; Henley v. Wilson, 81 N. C. 405; Carson v. Ray, 7 Jones, 609; Pittigrew v. Dobbelaar, 63 Cal. 59, 58 Am. Dec. 383; Harmon v. James, 7 Sm. & M. (Miss.) 111, 45 Am. Dec. 296; Prettyman v. Walston, 34 Ill. 175; Jackson v. DeLancey, 11 Johns. (N. Y.) 364.

It can hardly be contended that a devise by a testator of "all of my lands" is not sufficient to carry title to his devisees to lands shown to answer that description. But it is suggested that though the devise was sufficient to convey title, it was insufficient to operate as color of title. We recognize, of course, the difference between a will and a deed, and the great liberality allowed in making wills and passing title by them. But if we look at this case as if the description were in a deed, it would seem somewhat peculiar if a description were sufficient for the conveyance of good title, but insufficient to constitute even a semblance or color of title,—sufficient to convey, but not sufficient to purport to convey. Some decisions have held that the description to constitute color must be as complete as that which is necessary for a conveyance of title. Hanna v. Palmer (Ill.), 61 N. E. 1051. It has been said that "the same degree of certainty was required." Allmendinger v. McHie (Ill.), 59 N. E. 517; *Luttrell* v. *Whitehead,* 121 *Ga.* 699. But no case has come to the writer's notice where it has been held that a description in a deed must be better to constitute color or semblance of title than to convey actual title. To what extent would the description, "all of my lands," in the devise be color of title? To the extent that certain lands were shown to fall within the description "all of my lands." How is this any less valid than if the description were

"my home place," or the "place where I reside," or the like? Any such description must be adjusted to its subject-matter by extraneous evidence. In Busch *v.* Huston, 75 Ill. 343, it was held that "Where a party in possession of land, of which his wife is seized, as heir, of an undivided part, takes a quitclaim deed from one of the other heirs, who is seized of an undivided fourth thereof, and who simply released and quitclaimed all his right, title, and interest, such deed will constitute good color and claim of title to the extent of the grantor's interest, but no further." In Holbrook *v.* Forsythe, 112 Ill. 306, 21 Cent. L. J. 170, it was held that a devise by a testator of all the lands belonging to him in a particular State did not give the devisee color of title to those lands in the particular State to which his devisor had not a good, but only a colorable title. This seems to be somewhat restricted, as persons often describe lands as "mine," though their title, on careful legal examination, may be not entirely perfect. The headnotes in that case might appear at first view to hold that a description of all the land that the testator owned in the State of Illinois was not sufficient to constitute color of title at all. But a careful reading of the whole opinion will show that the ruling is as already stated. The rule in this State does not appear to be as strict as in Illinois. In *Johnson* v. *Girtman,* 115 *Ga.* 794, it was held that a quitclaim deed, taken in good faith, is sufficient color upon which to base prescriptive title, and that a conveyance of "all the right, title, interest, claim, or demand [the grantor] has or may have had in and to his interest in and to" a certain tract of land was sufficient to convey whatever interest the grantor had in the entire tract. In *Tumlin* v. *Perry,* 108 *Ga.* 520, 522, it was held, that, treating an obscurely written word as "owned," or supplying "owned" as an omitted word, a description in a bond for title of "all the lands which James Knox owned and now lying on the road from the town of Canton, in said county, to Orange, about six miles and a quarter east of Canton, it being in the third district and second section of said county, all in one body, containing several lots and parts of lots," construed in connection with the evidence identifying the land, was sufficient color of title to support a prescriptive title to the premises in dispute. In Cantagrel *v.* Van Lupine, 58 Texas, 570, it was held that "possession under a recorded deed, which described the land as 'all the land' which the vendor owned 'in Har-

ris county' is a sufficient description of the land, under the plea of five years limitation, when it is shown that the vendor had a recorded deed describing the particular land." In the present case the testator had recorded deeds covering the disputed and adjacent lands. They formed part of what was known as the Joshua Harriss plantation, of which he died in possession. In Davis v. Stroud, 104 N. C. 484, where W. sold a tract of land to D., who, after conveying several parts thereof to other parties, abandoned his purchase, surrendered his evidence of title, and gave up possession, and W. contracted to sell to H. the "residue" of the tract sold to D., and executed title in pursuance thereof, it was held that in an action by persons claiming under H., for possession against one alleged to be a trespasser, they must distinctly locate the residue by producing the deeds conveying away parts of the tract.

From the foregoing it will be seen that we hold the devise was a sufficient color of title. Had it not referred to or given any designation of lands at all, so that they could be identified, but had said, "all my property," or the like, thus giving no indication that any land was to pass under it, a different question would have been presented.

"There can be no adverse possession against a cotenant until actual ouster, or exclusive possession after demand, or express notice of adverse possession; in either of which events the cotenant may sue at law for his possession." Civil Code, § 3145. It is contended that the evidence in this case showed an ouster, and that prescription ran in favor of the defendant. We are not prepared to hold that when the sheriff went with the defendant to the land, which was vacant, and, merely looking at it, or pointing to it, informed the purchaser that it was delivered to him, this alone would constitute such ouster as would put the cotenant on notice and furnish a starting point from which prescription would run as to the half interest of the cotenant. In regard to whether actual possession was taken by the defendant (who claims an ouster), or to what extent, the question is rather one of fact than of law; and the evidence is not so clear and free from conflict as to authorize the court to direct a verdict.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*