## BUNGER *v.* GRIMM *et al.*

1. An order to sell land, granted to an administrator by the court of ordinary, describing the land as located in a named county and known by a certain name, and as containing a stated number of acres, more or less, and lying alongside a certain river, followed by an additional description giving the calls for three sides of it, is not void for uncertainty. When

property has a descriptive name, it may be conveyed by that name; and such description will prevail over one which is intended to be a further description, but which is uncertain and imperfect. Extrinsic evidence is receivable to apply the description to its subject-matter.

2. An administrator's deed, accompanied by the order of the ordinary granting leave to sell, is admissible as a muniment of title, without the production of the letters of administration.

3. An administrator's deed without an order of sale, or a sheriff's deed not accompanied by the execution under which the property is sold, is admissible in evidence as color of title.

4. An ancient map of the public roads of a county, purporting to have been made by authority, and coming from the proper custody, is competent evidence to show the existence and location of the public roads of the county at the time it was made; and in a contest between coterminous landowners, where a road delineated on the map is claimed to be a boundary, such map is relevant, and is receivable in evidence when upon inspection by the court the map appears to be what it purports to be and is shown to have been produced from the proper depository.

5. An unofficial survey is admissible in evidence when proved to have been correct.

6. The charge of the court in respect to prescriptive title was an inaccurate statement of the law.

7. A disputed boundary line between coterminous proprietors may be established by oral agreement, if the agreement be accompanied by actual possession to the agreed line, or is otherwise duly executed.

8. Where a plaintiff seeks to enjoin a defendant from trespassing on land, on the ground that he has title to the premises, and the defendant in his answer asserts title to the premises, and both parties offer evidence to substantiate their respective claims, it is error to instruct the jury that their verdict would not determine the title to the premises.

SEPTEMBER 22, 1914.

Equitable petition. Before Judge Charlton. Chatham superior court. July 21, 1913.

*P. W. Meldrim*, for plaintiff in error. *R. R. Richards*, contra.

EVANS, P. J. This is an action by John H. Grimm et al. against H. H. Bunger, to enjoin the defendant from knocking down parts of a fence erected by the plaintiffs, and otherwise trespassing upon a triangular piece of land containing between two and three acres, located in Chatham county, adjacent to the bridge which spans the Ogeechee river. The plaintiffs prevailed, and the court refused the defendant a new trial.

1. The court received in evidence a deed from Brooks, administrator, to the plaintiffs, over the objection that the order from the court of ordinary authorizing the sale was insufficient to identify the premises, as one of the boundaries was omitted, and because the description in the deed did not correspond with the description

29

in the petition. The description of the premises in the order is all "that tract of land lying in the county of Chatham, said State, known as Litchfield, containing one thousand and eighty-four (1084) acres, more or less, lying on the Great Ogeechee River, bounded on the south by the Savannah and Darien Road, East by the Fort Argyle Road, and west by the Great Ogeechee River." When property has a descriptive name, it may be conveyed by that name; and such description will prevail over one which is intended to be a further description, but which is uncertain and imperfect. Martin v. Lloyd, 94 Cal. 195 (29 Pac. 491). Extrinsic evidence is receivable to apply the description to its subject-matter. *Hancock* v. *King,* 133 *Ga*. 734 (66 S. E. 949). If in fact the premises described in the petition are embraced within the premises known as "Litchfield," parol evidence is admissible to establish the same.

2. An administrator's deed, accompanied by the order of the ordinary granting leave to sell, is admissible as a muniment of title, although the letters of administration may not be produced. The granting of the order of sale by the ordinary adjudicated that the applicant was the administrator and authorized to make the sale. *Roberts* v. *Martin,* 70 *Ga.* 196.

3. It has been repeatedly ruled by this court that an administrator's deed without an order of sale, or a sheriff's deed not accompanied by the execution under which the property was sold, though inadmissible as a muniment of title, is admissible in evidence as color of title. *Street* v. *Collier,* 118 *Ga.* 470 (45 S. E. 294); *Dodge* v. *Cowart,* 131 *Ga.* 549 (62 S. E. 987); *Burkhalter* v. *Edwards,* 16 *Ga.* 593 (2), 596 (60 Am. D. 744).

4. The court received in evidence a copy of a map purporting to have been made by John McKinnon on September 5, 1816, over the objection that the map did not purport to have been made by the county surveyor, and that a map made by a private person should be proved to be correct before it is admissible as evidence. Counsel for the defendant stated that he did not insist upon the introduction of the original, which was in the custody of the county commissioners. The court allowed the map to be introduced on the ground that it came from the custody of the proper public officials, and purported on its face to be a map of the county roads in 1816. The map had an endorsement thereon that it was made at the request of the commissioners of roads of the county, pur-

porting to have been signed by "John McKinnon, Surv.," and bearing date September 5, 1816. An ancient map of the public roads of a county, purporting to have been made by authority, and coming from the proper custody, is competent evidence to show the existence and location of the public roads of the county at the time it was made; and in a contest between coterminous landowners, where a road delineated on the map is claimed to be a boundary, such map is relevant on the question of boundary. The theory on which such ancient maps are received is that where the matter in controversy is ancient and not susceptible of better evidence, traditionary reputation of matters of public and general interest is competent evidence of the matters to which it relates. 1 Greenleaf, Ev. (16th ed.) 226; Adams v. Stanyan, 4 Foster (N. H.), 405; Donohue v. Whitney, 133 N. Y. 178 (30 N. E. 848). The original map should be produced and shown to have come from the proper depository; and if upon inspection the court should be of the opinion that it is what it purports to be, the map is receivable in evidence without further extrinsic proof.

The admissibility in evidence of an ancient map of matters of a public and general interest is not to be confounded with a map which a landowner causes to be made of his premises. In *Bower* v. *Cohen,* 126 *Ga.* 35, 40 (54 S. E. 918), it was doubted that the rule admitting a map thirty years old as an ancient document applied to private maps. In Jones v. Huggins, 1 Dev. Law, 223 (17 Am. D. 567), Taylor, C. J., gave as a controlling reason for excluding an ancient survey of land made under the owner's direction and for his convenience, when offered in behalf of himself or those claiming under him, that it might benefit men to include in such surveys more land than belonged to them.

5. The defendant offered a certain map of the premises, made by the county surveyor, purporting to be a correct map, showing the boundaries of the land as claimed by the defendant. In connection with this evidence it was offered to prove the correctness of the map by the defendant, who was with the surveyor when the survey was made. In approving this ground of the motion the court certified that the map was excluded from evidence for the reason that "the persons who were present when the work was done were allowed to testify; but the surveyor being accessible, and for a part of the time in the court-room and not called to the stand, the court held that

his testimony was necessary to prove the correctness of the map, and that the adversary had the right of cross-examination. The map offered was a copy by the surveyor, purporting to have been copied from the records of deeds in Book 2 I's, 217." The survey was not offered as one made under the rule of court (Civil Code, 1910, § 6314). The defendant offered to prove the correctness of the survey, by a witness who was present when the lines were run, and who proposed to testify to its correctness. An unofficial survey is admissible in evidence when proved to have been correct by the parties who made it. *Maples* v. *Hoggard,* 58 *Ga.* 315. In principle it would seem to be immaterial whether the witness who proposes to testify to the correctness of the survey be the surveyor, or one who was present at the time the survey was made, if he offers to testify to the correctness of the survey. The defendant offered himself as a witness to prove the correctness of the map. If his testimony went to the fact that the map was correct, it should have been received in evidence, notwithstanding the surveyor may not have been put upon the stand and was an accessible witness.

6. Exception is taken to the following excerpts from the charge: "As already indicated to you in what I have said here, it sometimes happens that people are holding adjoining lands, and the boundaries of each extend beyond the line, and each paper takes in the premises in dispute—what is called in law an interlock; and the question arises in that case, what is the jury to do? If they find the plaintiffs' papers, for instance (whether by deed or prescription or color of title), include this particular land in question here on which they claim a trespass was made, and it is also shown that the boundaries of the land described in the defendant's papers (whether by deed, by prescription, or by color of title) extend over the point where the alleged trespass is said to have been committed, and you are confronted with that situation, then the question arises, how that is to be adjusted? The general rule in regard to that is this: that where the boundaries of each cover the same point, then whatever may be the superior title held by any one of the parties, to that party the decision should go. For instance, if one holds by a regular chain of title back to a grant of the State of Georgia, and the other one holds by color of title, and they clash there, superior title as shown by the evidence would control, that is the deed. If you find that both hold the same character of title, and the length of

possession thereunder is the same, and an interlock resulted there
from the description in the paper, all I can say to you in that
regard is that the law would leave them where they found them.
If one color of title was perfected, say thirty years ago, and the
other color of title was perfected only ten years ago, then as be-
tween those you would adopt the color of title which had been
perfected thirty years ago. If they both are of the same date,
and running the same time, and the seven years had practically
transpired at the same time, and therefore both perfected at the
same time, then the law would leave them where they found them."
The criticism is, that the court laid down a wrong rule of law;
the true rule being that if adjacent owners are in constructive
possession of the same land, then no prescription can arise in
favor of either, and if two persons claim to be in actual possession
of the same land, then he is deemed in possession who has the legal
title. Throughout the whole charge, and as apparent from the
foregoing excerpts, the court instructed the jury on the theory that
title by prescription was based upon possession alone; that adverse
possession of land under color of title for' seven years was known
as color of title. For instance, the court instructed the jury, that
there are several ways in which one becomes the owner of land in
this State; that one class of title is a series of successive conveyances
from the sovereign; another class is that known as prescriptive title,
which is "based upon possession, not upon paper title, not upon a
deed;" and "the third method of acquiring title is what is known
as color of title, and that has in it some of the elements of title by
deed and some of the elements of title by prescription." The court
was in error as to his classification as to color of title being some-
thing apart from prescription. The statute declares that actual
adverse possession of lands for twenty years shall give a good title
by prescription against every one except the State or persons labor-
ing under disabilities; and adverse possession of lands under writ-
ten evidence of title for seven years shall give a like title by pre-
scription. Civil Code (1910), §§ 4168, 4169. A prescriptive title,
therefore, may be founded either upon twenty years actual adverse
possession of land, or upon seven years adverse possession of land
under color of title. In the present case neither of the contending
parties deraigned a perfect paper title. Both parties offered in evi-
dence certain deeds as color of title, and proved possession of a por-

tion of the land embraced therein. In other words, both plaintiffs and defendant were seeking to assert a constructive possession over the premises in dispute. If one of the parties had acquired prescriptive title by reason of the fact that he was in adverse possession of his land for a period of seven years before his adversary went into possession of the land claimed under his color of title, such party would not lose his prescriptive title which had ripened before the other's possession began. But if neither was in actual possession of the premises in dispute, and both were in constructive possession thereof, and neither had acquired a prescriptive title before the possession of the other began, no prescription would arise in favor of either. In *Harriss* v. *Howard*, 126 *Ga.* 325 (55 S. E. 59), it was said that "adjacent owners may be in constructive possession of the same land, being included in the boundaries of each tract. In such cases no prescription can arise in favor of either; but the rights of the parties will be determined according to the superiority of the one title or the other aside from such prescription." That is to say, if both of the adjacent landowners were in constructive possession, neither having a prescriptive title against the other, and one of them had a paper title from the sovereign, that title would prevail. We do not understand, however, the rule to be that if neither of the adjacent owners has a complete title, the one whose color of title is the oldest shall be preferred, where the possession of neither has ripened their respective color of title into prescriptive title. We think the charge of the court was an inaccurate statement of the law.

7. The court charged: "If you find from the evidence in the case that the prior owners of the land in question, that is to say, plaintiffs' ancestors in title, and defendant's ancestors in title, had agreed on a division or boundary line, then I charge you that that division or boundary line so agreed upon must govern in this case." The excerpt from the charge did not fully state the law respecting the conclusiveness of an agreed line between coterminous owners. A disputed boundary line between coterminous proprietors may be established by oral agreement, if the agreement be accompanied by actual possession to the agreed line, or is otherwise duly executed. *Osteen* v. *Wynn*, 131 *Ga.* 209 (62 S. E. 37, 127 Am. St. R. 212).

8. The jury were instructed that the object of the present suit "is to prevent the defendant from doing repeated acts prejudicial

to the rights of the plaintiffs, who claim to be owners of the land. The verdict of the jury does not determine title. All they have to find from the proofs is that they believe that ownership in the plaintiffs is established" under the evidence in the case. In their pleadings the plaintiffs asserted their right to an injunction by reason of their ownership of the land upon which the alleged trespasses were committed. Their right to injunction was dependent upon showing title in themselves. Issue was joined by the defendant, and both sides submitted evidence tending to show a prescriptive title to the premises in dispute. In the grant of an interlocutory injunction against a trespasser the plaintiff may not be held to strict proof of title. It is sufficient to sustain an interlocutory injunction against trespassers on land, in the absence of a better outstanding title, for the plaintiff to show a prima facie title. *McArthur* v. *Matthewson,* 67 *Ga.* 134. But on the final hearing, where the plaintiff prays permanent injunction against interfering with his possession, on the ground that he has title to the land, and the defendant also sets up title to the land, the plaintiff is not entitled to injunction unless he shows title in himself.

The motion for new trial contains numerous grounds. Those which we have specifically discussed entered into all the others, and such as are not specifically noted are controlled by the foregoing discussion. *Judgment reversed. All the Justices concur.*