8194. FLETCHER, adm'r, *v.* SOUTHERN LOAN CO.

1. The option contract which was the basis of the suit was not so vague, uncertain, or indefinite that the property therein referred to could not be identified with the aid of extrinsic testimony. The petition set forth a cause of action, and the court did not err in overruling the general demurrer.
2. There was no error in admitting in evidence the option contract without proof of its execution, since, irrespective of all else, it appears that proof of its execution and delivery was later submitted without objection.
3. The alleged newly discovered evidence was clearly cumulative and impeaching in character, and therefore it can not be said that the court abused its discretion in refusing a new trial on this account.
4-6. In the light of the entire charge of the court, the various assign-

ments of error as to the charge are without substantial merit. The court did not err in overruling the motion for a new trial.

DECIDED JULY 26, 1917.

Action on contract; from Irwin superior court—Judge George. October 20, 1915.

*H. E. Oxford, Quincey & Rice,* for plaintiff.

*C. W. Fulwood, L. P. Skeen, J. W. Haygood, Eldridge Cutts,* contra.

WADE, C. J. 1. "The description of land in a contract of sale is sufficiently definite where the premises are so described as to indicate the grantor's intention to sell a particular lot of land. Where the contract indicates that a particular tract is intended to be conveyed, its practical identification can be proved by extrinsic evidence." *King* v. *Brice,* 145 *Ga.* 65 (88 S. E. 960). The description in the option which was the basis of this suit was as follows: "My land of sixty-seven hundred acres, except graveyard of two acres. Said land being in the county of Irwin, State of Georgia, known as lots Nos. 52, 53, 85, 86, 87, 88, 100, 99, 98, 97, 96, 132, 133, 134, 135, 143, aggregating 6,700 acres, and lying seven miles of Ocilla of county seat." "The test as to the sufficiency of the description of property contained in a deed is whether or not it discloses with sufficient certainty what the intention of the grantor was with respect to the quantity and location of the land therein referred to, so that its identification is practicable." *Crawford* v. *Verner,* 122 *Ga.* 814, 816 (50 S. E. 958). "The maxim, however, has no application to vague descriptions, which do not indicate the grantor's purpose and intention to convey a particular tract or lot of land. A description in a will of 'all my land' is good, for the reason that its location may be definitely ascertained by aliunde proof as to the location of the testator's land. *Harriss* v. *Howard,* 126 *Ga.* 325 (55 S. E. 59). An executory contract for the sale of land described the property as 'my half interest in the property corner of Second and Cherry streets, Macon, Ga.,' and it was held that the description indicated the vendor's intention to sell his half interest in the land lot on the corner of Second and Cherry streets, Macon, Georgia, and that parol evidence was admissible to show that the vendor was interested in only one tract on the corner of the named streets' in Macon, Georgia, and certainty in the contract would be supplied. *Pearson* v. *Horne,* 139 *Ga.* 453 (77 S. E. 387)." *King* v. *Brice,* supra.

In *Tumlin* v. *Perry,* 108 *Ga.* 520 (34 S. E. 171), it was said: "When a party has gone into possession of certain lands under bond for title, the fact that such bond does not sufficiently describe the land to locate it definitely and exactly does not render such bond inadmissible in evidence as color of title. When there is any ambiguity in the bond in its description of the premises conveyed, parol evidence is admissible to explain such ambiguity. The bond in this case, construed in connection with the parol evidence, was sufficient as color of title to support a prescriptive title to the premises in dispute." In that decision the descriptive part of the bond is set out as follows: "Good and sufficient warranty title in fee simple (except in the minerals and privileges of working for minerals) to the following lands, to wit, all the lands which James Knox and now lying on the road from the town of Canton, in said county, to Orange, about six miles and one quarter east of Canton, it being in the third district and 2d section of said county, all in one body, containing several lots, also, adjoining to said tract of land, a place known as the Erwin-Henderson place, one lot and part of another, and others," etc. The court held that: "The description is certainly neither clear nor definite, but the uncertainty is not so great that the description can not be made certain by extrinsic evidence." In *Harriss* v. *Howard,* supra, it was said: "It can hardly be contended that a devise by a testator of 'all of my lands' is not sufficient to carry title to his devisees to lands shown to answer that description. But it is suggested that though the devise was sufficient to convey title, it was insufficient to operate as color of title. We recognize, of course, the difference between a will and a deed, and the great liberality allowed in making wills and passing title by them. But if we look at this case as if the description were in a deed, it would seem somewhat peculiar if a description were sufficient for the conveyance of good title, but insufficient to constitute even a semblance of color of title,—sufficient to convey, but not sufficient to purport to convey." In *Crawford* v. *Verner,* supra, the court said: "And where it can be gathered from the words employed in a deed that the intention of the grantor was to convey the whole of the tract owned by him, even a vague description of the same will suffice, if by competent parol evidence its precise location is capable of ascertainment and its identity can thus be established; but if the de-

scription is so indefinite that no particular tract of land is pointed out by the instrument itself, the description must be held so defective as to prevent the instrument from operating as a conveyance of title."

It can not be said that the description in this case was so indefinite "that no particular tract of land is pointed out by the instrument itself;" for the number of acres in the tract is named, the county and State in which it is situated, and the distance from Ocilla, the county seat; and by way of further identification the land is described as being "my land of sixty-seven hundred acres, except graveyard of two acres," and the numbers of the lots which in whole or in part are included in the tract of sixty-seven hundred acres are given. It could hardly be within the bounds of possibility that Fletcher, who gave the option, could own more than one tract of land in the county of Irwin, State of Georgia, seven miles from Ocilla, with a graveyard thereon, which comprised lots and parts of lots numbers 52, 53, 85, 86, etc. It is therefore apparent that the land described in the option could easily be identified by the aid of extrinsic evidence. See, in this connection, the opinion in *King* v. *Brice,* supra. We hold, therefore, that the description of the land contained in the option was not so vague and indefinite as to render the contract unenforceable.

Nothing that is said in the case of *Mims* v. *Gillis,* 19 *Ga. App.* 53 (90 S. E. 1035), is in conflict with what is here ruled. In that case the suit was based on an option and some of the property therein referred to was described merely as "all of my entire property according to my tax returns of 1909 and 1910, also the Central Hotel. This is meant to cover all of my real and personal property both of every description in the city of Sylvester, whether improved or unimproved." The property appearing on the tax books as that of the maker of the option included not only the "Central Hotel," but three "two-story buildings with stores of the value of nine thousand ($9,000.00) dollars; two vacant lots with brick thereon, etc., of the value of four thousand ($4,000.00) dollars; two-story boarding house on Kelley street of the value of thirty-five hundred ($3,500.00) dollars; thirteen residence buildings in the city of Sylvester owned by Mrs. E. Gillis at the time of giving her taxes in the year of 1909 of the value of thirteen thousand five hundred ($13,500.00) dollars; also two thousand ($2,-

000.00) dollars worth of furniture, and two thousand ($2,000.00) in notes and accounts, making an aggregate sum of forty-nine thousand ($49,000.00) dollars."

In this action the Southern Loan Company sued the administrator of E. G. Fletcher, deceased, for damages, alleging that the plaintiff had paid the decedent, for the option referred to, the sum of $1,000, to be in part payment for the property if the trade should be consummated in accordance with the terms recited in the contract; that at the time of making the contract he "was in the actual possession of and claimed as owner a tract of 6,700 acres of land, lying approximately seven miles from Ocilla in Irwin county, Georgia, consisting in some instances of the entire land lots, and in other instances of such portions of such land lots, being known as Nos. 52, 53, 85, 86, 87, 88, 100, 99, 98, 97, 96, 132, 133, 134, 135, and 143 in the sixth district of said Irwin county, and said tract consisting of all lands in the lot numbers named which were owned by and in possession of said E. G. Fletcher at the date of the execution of said contract, and said lands were notoriously known as the lands of said E. G. Fletcher, and claimed by him, and to which he held title except to the extent of the conveyance of timber as hereinafter alleged;" that "the lands referred to and intended to be embraced in the option, a copy of which is hereto attached, were the lands described in the last preceding paragraph, and were so known and understood by both parties to the said option contract;" that at the time the plaintiff purchased the option aforesaid there was an outstanding timber lease, made by E. G. Fletcher long prior to the date of the option, of which the plaintiff had no notice or knowledge, whereby Fletcher had leased, transferred, sold, and conveyed for a valuable consideration, and for a period extending beyond the time within which the option must be exercised, "all of the timber suitable for sawmill and turpentine purposes in and upon all of the lands described in and included in the said option and contract, copy of which is hereto attached, and also had conveyed in said lease many other rights, privileges, easements, and incumbrances upon said property, such as the right to contract, maintain, and operate tramroads in, on, and over said lands, and across the cleared land, to build sawmills and operate same; which said lease was before, at, and subsequent to the execution of said option contract, a valid,

42

material, and subsisting incumbrance upon all of the property described and included in petitioner's said option and contract here sued upon." It was further alleged that Fletcher made no reference to the existence of this contract at the time the plaintiff purchased the option from him, and said contract was not exhibited at the time the option was executed; that the plaintiff was ready, able, and willing to exercise the right of purchase under the option, and to purchase and pay for the property at the price and in accordance with the terms of purchase therein set forth, before the first day of January, 1912 (when the option expired), and while the option contract was in full force and effect; that no tender of the purchase price had been made to the defendant, for the reason that Fletcher had conveyed away the timber upon the property suitable for sawmill and turpentine purposes, and placed upon the property the incumbrance above mentioned, which would not expire for a number of years to come, and had thus, before his death, placed it beyond his power and beyond the power of his administrator to comply with the terms of the option contract and sell or make perfect and complete title to the plaintiff in accordance with the option contract. The plaintiff claimed damages, alleging that the property during the period when the contract was in full force and effect was worth $30,000 in excess of the price fixed in the contract, and that it was still worth that much in excess of said sum; and further, that $1,500 had been expended as the result of the breach by the deceased of the option contract, in that the plaintiff had employed counsel to examine the titles, at an expense of $1,000, and had likewise expended $500 for having a survey thereof made. The defendant demurred generally and "because the description of the land sought to be conveyed by the option is too vague, uncertain, and indefinite to be binding" upon the administrator or his intestate. The judge overruled the demurrer. The trial resulted in a verdict in favor of the plaintiff for $1,395.

It follows from what has been said above that the court did not err in overruling the demurrer.

2. The 4th ground of the motion for a new trial complains of the admission in evidence of the option contract referred to above, for the reason that the execution of the contract had not been proved. The court appends the following note to this ground of the motion: "If, under the pleadings, proof of the execution of

the option was necessary, later, without objection, direct proof of its execution and delivery was made." It is unnecessary, in view of this note by the presiding judge, to say more than that at all events, under the circumstances, there is no merit in this ground.

3. The alleged newly discovered evidence was to the effect that one John Tucker, a citizen and resident of Irwin county, properly vouched for by witnesses as to his standing in the community, had heard a discussion between Frank Scarboro, of the plaintiff company, and the deceased Fletcher, who executed the option contract, in which Scarboro had not only admitted his knowledge as to the existence of the timber lease covering the same property, but had urged Fletcher to sign the option upon which the suit was based, and stated that the timber lease would not interfere with the sale of the lands, as he had examined that lease and ascertained how long the timber covered thereby would be worked, and thus found that both the turpentine and sawmill timber would be used in ample time for Scarboro to dispose of the land as he expected to do. It appears from the brief of evidence that Scarboro was interrogated fully in regard to his knowledge of the timber lease at the time the plaintiff obtained the option from Fletcher, and he distinctly denied any knowledge as to its existence, and said, "I think it was sixty or ninety days after the option was taken that I discovered that there was an incumbrance on the property in the way of timber or turpentine lease, probably a little longer than that." So it is evident that the alleged newly discovered evidence would have amounted merely to impeaching testimony, and in addition it was merely cumulative of other testimony from witnesses for the defendant, to the effect that Scarboro had full knowledge of the existence of the timber lease, and of the time when it would expire, and had himself actually gone over the lands and had seen negroes engaged in hacking the trees, chipping, and dipping turpentine out of the boxes. And furthermore, a witness said that he thought Scarboro had seen the lease on record, and he *knew* that "Mr. Scarboro and Ebb Fletcher [the deceased] talked of that lease in my presence over there at Ebb's house before the option was taken." The alleged newly discovered evidence would have been merely the evidence of another witness to the same facts already testified to in substance in behalf of the

defendant; and the judge did not abuse his discretion in refusing the grant of a new trial upon this ground.

4. Even if erroneous, the charge of the court complained of in the 10th ground of the motion for a new trial was not harmful to the defendant, since the verdict indicates clearly that the jury found no prospective profits, but allowed the plaintiff actual damages only, amounting to less than the sum expended for the option, with interest and the expenses incurred thereunder.

5. Viewed in the light of the entire charge of the court, there is no merit in grounds 11, 12, and 13 of the motion for a new trial, in which excerpts from the charge are complained of, as the jury was expressly instructed that the actual physical condition of the land or the timber at the time of the option would in no event amount to a breach of the contract, since the parties were presumed to have contracted with reference thereto.

6. The remaining grounds of the motion for a new trial are without substantial merit.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*