### HENDERSON *v.* WALKER.

1. On the trial of a case involving the establishment of a dividing line between coterminous-land owners it was not error under the facts, for the court to instruct the jury: "Where an agreement establishing a dividing line between adjoining properties is followed by acquiescence and possession, the parties are concluded by their agreement; and when the acquiescence and possession have continued for the period of time prescribed by the statute of limitations, a perfect title by adverse possession is acquired. If adjoining proprietors deliberately erect monuments or fences or make improvements on a line between their lands upon the understanding that it is the true line, it will amount to a practical location."

2. Nor was it error in such a case for the court to charge the jury as follows: "If you find this fence was established by the predecessors in title of these parties, and that the fence was on a line agreed upon (and as to that the court expresses no opinion), and that the fence has been acquiesced in by both parties for more than seven years, it would become the legal line between the parties."

3. The verdict was authorized by the evidence.

No. 3888. APRIL 16, 1924.

Equitable petition. Before Judge Eve. Irwin superior court. June 21, 1923.

Mrs. M. E. Walker brought an equitable action against D. R.

Henderson, and alleged in substance as follows: She is the true and legal owner of all of lot of land No. 39 in the 5th district of Irwin County, containing 490 acres, more or less, and is now in the actual possession and control of said lot, having been the owner and in possession since October 31, 1905. Columbus Graham, deceased, was the owner and in possession of all of lot of land No. 38 in the 5th land district of Irwin County, when plaintiff purchased and went into possession of lot No. 39. Columbus Graham continued to own said lands until his death, which occurred about the middle of the year 1914. Said land bounds plaintiff's land on the east division line separating said lot. About the month of February, 1907, plaintiff desired to erect a fence on the dividing line separating her land from the land of Columbus Graham; the division line was uncertain, indefinite, and unknown, and before erecting the fence plaintiff approached Columbus Graham, with reference to agreeing upon the dividing line between plaintiff's land and Graham's land, that is between lots 38 and 39, and Graham suggested that Hon. Manasas Henderson "be gotten," and that he would abide by whatever line might be run out and determined by said Henderson. Plaintiff agreed to have Henderson establish the line, and in pursuance thereof a line was run and was determined upon as being a line dividing the lands of Graham and plaintiff; said line was run by Henderson together with M. J. Paulk and C. A. Walker (who was the son of plaintiff and who acted as agent for her), and agreed to as being the true dividing line between plaintiff's land and the land of the said Graham. Immediately thereafter plaintiff acted upon said agreement and built her fence along said line with the knowledge and consent of Graham, and went into possession thereof in the year 1907, and has continuously been in possession of the same until the present time. Immediately upon erecting the fence upon the land plaintiff began to clear and cultivate it, and placed it in a high state of cultivation, and has been cultivating and making crops upon it from the year 1907 until the present time. Columbus Graham never repudiated the line during his lifetime, but on the contrary recognized it as being the dividing line between his land and plaintiff's land until the time of his death. The fence which was built upon the dividing line is now the true line, it having been built on said line for a period of more than seven years; the adjoining-land owners have

acquiesced for a period of more than seven years, and the same is established as a matter of law as the dividing line. D. R. Henderson neither as an individual nor as administrator has any legal right to encroach upon or interfere with the possession of said land by plaintiff. D. R. Henderson was duly appointed administrator of the estate of Columbus Graham, deceased, at the September term, 1914, of the court of ordinary of Irwin County, Georgia; he qualified, and began immediately to act as administrator, and is still acting in that capacity; at the October term, 1916, he as administrator obtained leave from the court of ordinary to sell 346-1/2 acres of lot 38 in the 5th district of Irwin County, the land adjoining that of plaintiff, the western boundary line of said tract being the dividing line between the land of plaintiff and that of Columbus Graham, which was agreed upon as hereinbefore set out. After due and legal advertisement the land was offered for sale at public outcry before the court-house door of the county by Henderson as administrator, and was bid off by A. S. Harris, of Irwin County, for $11,000, Harris being a man of means and worth $50,000 or more. For some reason unknown to plaintiff, Henderson as administrator has never made and executed a deed to Harris conveying the land, although plaintiff believes that Harris could make or compel the administrator to execute a deed. ·Henderson, after repudiating the sale as administrator to Harris, approached the heirs at law of Columbus Graham, and attempted to buy from said heirs the same land that was sold to Harris, being the 346-1/2 acres of lot 38. Henderson purchased these distributive shares while he was administrator (and he is still administrator) of the estate, for a sum considerably less than the bid that was made by Harris, and is now claiming to own in his individual capacity the land in lot 38 by reason of the purchase made from the distributees of the estate. Henderson as an individual is not the legal owner in fee simple of the land, but he is holding it in trust for the estate of Graham, deceased; and each heir at law of Graham has an interest in the title to the land, for the reason that Henderson is forbidden both by law and equity from purchasing the land from the distributees while he is acting in the capacity of administrator of the estate of Columbus Graham.

D. R. Henderson, either as an individual or as administrator, is attempting to encroach upon, and threatens to take possession of,

a strip of land triangular in shape, lying in the northeastern part of plaintiff's tract of land and adjoining the 346-1/2 acres of lot 38. Henderson has cut plaintiff's wire fence and is entering upon her land, and has driven, or threatens to drive, away by force or otherwise, plaintiff's hands from plowing the lands, and has staked off about ten acres, more or less, of plaintiff's land, and is preparing to enclose it by removing plaintiff's wire fence to the place so staked off by him. Henderson has no right or authority to enter upon the land or to interfere with plaintiff's possession, and he has been requested to desist from so doing; but he refuses, and threatens and is actually proceeding to make preparations to take forcible possession of plaintiff's land. She has placed this land in a high state of cultivation and has been producing large crops on it for the past thirteen years, and she is entitled to protection in a court of equity from being interfered with in the possession of the land by Henderson or any other person. If Henderson, either as an individual or as administrator, is permitted to destroy and tear down plaintiff's fence and remove it from the established line on which it was erected, and to drive away plaintiff's hands by force, and is permitted to take possession of plaintiff's land, she will be irreparably damaged, and it will be necessary for her to bring an action at law to eject Henderson individually or as administrator, or probably the heirs at law of Columbus Graham, deceased; and thereby a multiplicity and circuity of suits will be necessary. Plaintiff has no adequate remedy at law, and cannot prevent such illegal interfering with her possession except through a court of equity. She prays that D. R. Henderson, individually and as administrator, be restrained and enjoined from tearing down and destroying her fence, from driving away and interfering with her work-hands, and from fencing or working or entering, either directly or indirectly by himself, his agents or confederates, upon the land now owned and in possession of plaintiff; that he be enjoined from taking possession or attempting to take possession of the ten acres of land, more or less, before referred to; that upon the final trial he be required to account to plaintiff for the damage done in cutting her fence and in driving away her work-hands, and for general relief.

The defendant filed an answer in which he denied some of the allegations of the petition and admitted others. He avers that

the rights of the plaintiff are confined to lot of land No. 39 and that she has no right, title, or interest in any portion of lot No. 38. He owns and is in possession of lot No. 38; he does not assert any right or title to any portion of lot No. 39, and is not in possession of any portion of said lot, and is not seeking to get possession of any portion thereof. As he had a right to do, he peaceably, quietly, and without any interference from the plaintiff or any one else, took possession of his own property, was in possession of the same at the time the petition was presented and the rule nisi was issued, and is still in possession; and he denies the authority of this court to issue an order in the nature of a mandatory injunction, requiring him to vacate property to which he holds the title and of which he is in possession.

On the trial the jury returned a verdict in favor of the plaintiff, and in favor of the injunction; and the court decreed accordingly. The defendant filed a motion for new trial, which was overruled, and he excepted.

*Quincey & Rice,* for plaintiff in error.

*Rogers & Rogers,* contra.

HILL, J. (After stating the foregoing facts.)

1. The special exceptions in the motion for new trial are to two excerpts from the charge of the court, and on alleged errors in failing to charge the jury certain principles therein stated. The court charged the jury: "In this connection and as setting forth a rule or principle of law proper for your consideration in this case, I charge you the following: where an agreement establishing a dividing line between adjoining properties is followed by acquiescence and possession, the parties are concluded by their agreement; and when the acquiescence and possession have continued for a period of time prescribed by the statute of limitations, a perfect title by adverse possession is acquired. And if adjoining proprietors have deliberately erected monuments or fences or made improvements on a line between their lines upon the understanding that it is the true line, it will amount to a practical location." Movant contends that this charge was error for the reasons: (*a*) Because it confuses the rule of law which provides that acquiescence for seven years by acts or declarations of adjoining-land owners, which establishes a dividing line, with that rule of law which provides that an executed agreement between the parties will also establish a dividing line. (*b*) Because there was no evidence that any agreement had ever been en-

tered into between the coterminous owners which had become executed. (c) Because if the charge undertakes and was intended to cover the law relating to seven years acquiescence by acts or declarations of adjoining-land owners, the same is incomplete in that the word "acquiescence" is used and left to stand alone, without going further, as is done in the statute, and adding, "by acts or declarations of adjoining-land owners." (d) Because the charge fails to state the period of time in which acquiescence as defined by the statute will establish a dividing line between parties.

We are of the opinion that the excerpt from the charge of the court, when taken in connection with the general charge, is not open to the criticisms made against it. Answering the last criticism on the charge first, we find from reading the general charge of the court that he instructed the jury, "If you find this fence was established by the predecessors in title of these parties, and that the fence was on a line agreed upon (and as to that the court expresses no opinion), and that the fence has been acquiesced in by both parties for more than seven years, it would become the legal line between the parties." We are also of the opinion that the other criticisms of the charge are without merit. Taylor Graham, a brother of Columbus Graham, deceased, testified: "Mr. Walker was in possession of this land in 1907. I know when the line was run between my brother's land and Mrs. Walker's land, but I cannot say what date it was; there was a fence put there shortly after that time. I saw Columbus Graham at various times during his lifetime, and he was satisfied about the line; he never did complain about the fence there. . . I knew Uncle Nas Henderson in his lifetime. I heard Columbus Graham make the statement that if Uncle Nas ran that line he would be satisfied with it. I was there when they ran the line part of the way, but I did not go further than the corner of mine. I showed them where the corner was; they dug down and and found the corner post. Columbus Graham said that he was plumb satisfied. Mr. Walker was the one who dug down and found the post. Mr. Melvin Paulk and Mr. Nas Henderson were there. The fence has been there ever since 1906, ever since Mr. Walker has been in this county." Major Brunt, a witness for the plaintiff, testified: "I knew Columbus Graham in his lifetime. I married his brother Elias's daughter. I know where the fence is, separating the land of Mrs. Walker from the land now owned

by D. R. Henderson. I helped to survey the line which Uncle Lum sold to Major Fuller; the fence was agreed to be the original line, so far as I know; he said it was the agreed line. He told me when we run the line out for Major Fuller, he sold him some land and Major put up a barn there, and old man Lum told him the barn was too far on his land, and it was agreed to about it, and old man Lum and I went to run the line out for Major. He never had contended that Mr. Walker's fence was on his land; he always said that was the line. I understood him to say Mr. Nas Henderson ran that line for him." So, it will be seen that the charge is not open to the criticism that there was no evidence that any agreement had ever been entered into between the coterminous owners, which had become executed. Civil Code (1910), § 3821; *Osteen* v. *Wynne,* 131 *Ga.* 209 (3, *a, b*) (62 S. E. 37, 127 Am. St. R. 212); *Farr* v. *Woolfolk,* 118 *Ga.* 277 (45 S. E. 230); *Bunger* v. *Grimm,* 142 *Ga.* 448 (7) (83 S. E. 200, Ann. Cas. 1916C, 173); *Gornto* v. *Wilson,* 141 *Ga.* 597 (2) (81 S. E. 860); *Zachery* v. *Hudson,* 138 *Ga.* 85 (74 S. E. 768).

2. Exception is taken to the following charge of the court: "If you find this fence was established by the predecessors in title of these parties, and that the fence was on the line agreed upon (and as to that the court expresses no opinion), and that the fence has been acquiesced in by both parties for more than seven years, it would become the legal line between the parties." This charge, considered in connection with the general charge, is not open to the criticism that it confuses the law of establishing lines between coterminous owners by agreement with the statute which provides that seven years acquiescence by acts or declarations of adjoining-land owners will establish a line. Nor is it open to the objection that it does not correctly state the law which provides that acquiescence for seven years by acts or declarations of adjoining-land owners shall establish a dividing line, and that the court used the word "acquiescence" without restricting it to "acts or declarations of adjoining landowners."

3. Exceptions to the failure of the court to charge certain principles of law show no error, inasmuch as they are not adapted to the facts of the case. The evidence authorized the verdict and the court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*