## 25548. PEARRE *et al. v.* WILKINSON.

Decided November 27, 1936.

*B. B. McCowen, Isaac S. Peebles Jr., P. H. Rowe,* for plaintiffs in error.

*Curry & Curry, A. R. Williamson,* contra.

Sutton, J. George E. Wilkinson filed with the processioners of the 123rd district of Richmond County, a petition to have the lines around his land surveyed and marked anew, and particularly the northern line thereof, this being the line between his tract and the lands of C. Clifford Rosier, Mrs. Ollie Pearl Beck, J. H. Pearre, and Freeman S. Rosier, these and others being named as the adjoining landowners. The processioners, together with the county surveyor, made their survey, and the processioners filed their return in accordance with the statute, the same showing that the adjoining landowners were given the required written notice, a plat of their survey certified by the surveyor being attached to their return. The survey and return were made under date of May 26, 1932, the date of the application therefor being May 9, 1932, a copy of which was attached to the return. Within the time allowed by law, Mrs. Beck, C. Clifford Rosier, and J. H. Pearre filed separate protests to the return of the processioners. Mrs. Beck alleged that the processioners and the surveyor started at an old mill-dam and undertook to trace and mark anew the line in question by fixing the high-water mark of the old mill-pond, which had not been in existence for more than twenty-five years; that the marked line went out on her land some fifty feet beyond where the waters of the old pond ever came; that the line so marked is not the true line, but Butler's Creek is the true line; that she and her predecessors had been in actual, exclusive, open, and notorious possession of the land down to the run of Butler's Creek for more than twenty-five years, but the processioners and

surveyor took no notice of her possession in running the line; and that the processioners were not present when the surveyor made the markings as shown on the plat as filed, and had not seen the markings at the time they filed their report. The protests of C. Clifford Rosier and J. H. Pearre were practically the same as that of Mrs. Beck, except that Rosier alleged that Butler's Creek had been established as the dividing line between him and Wilkinson and their predecessors in title by acts and declarations for more than twenty-five years, and that the creek had been acquiesced in as the line for more than seven years. J. H. Pearre in his protest referred to himself as the owner of the Pearre tract of land adjacent to the line in question, but some months later he filed an amendment alleging that he and his six minor children were owners and tenants in common of this tract, and that these minor children had not been served with notice of the processioning proceeding as required by law. When the case was called for trial the protestants moved to dismiss the proceeding, for failure to give the minor children notice as required by law. The case was continued at Wilkinson's request; and he filed a petition alleging that the Pearre tract of land was conveyed to Mrs. Margaret Cornelia Pearre, who died before the survey, leaving J. H. Pearre and the six minor children as her heirs; that these children knew of, and one of them attended, the survey; that there had been no administration of the deceased's estate; and that the minors had no guardian. He prayed that J. H. Pearre and C. Clifford Rosier be appointed guardians ad litem for the minors, and that the minors be made parties. To this petition, Pearre and Rosier filed demurrers on the ground that no cause of action was set out, and on certain special grounds, which were met by amendment. The demurrers were overruled. They filed also an answer. After due notice to show cause why they should not be appointed, the court appointed Pearre and Rosier guardians ad litem for the minors, and made the minors parties to the case. To the judgments overruling their demurrers, appointing them guardians ad litem, and naming the minors parties, J. H. Pearre and C. Clifford Rosier excepted pendente lite. When the case was called for trial at a later term, the protestants made a motion to dismiss the processioning proceeding, on the ground that the minors as adjacent landowners had not been notified. The trial resulted in a verdict

in favor of Wilkinson. The protestants' motion for new trial was overruled. They excepted to that judgment and to the orders overruling the demurrers and the motion to dismiss, and appointing guardians ad litem and making the minors parties.

■ It is provided in the Code, § 85-1605, that in a proceeding to procession land lines, "ten days written notice of the time of such running and marking shall be given to all the owners of adjoining lands, if resident within this State; and the processioners shall not proceed to run and mark such lines until satisfactory evidence of the service of such notice shall be produced to them," and in § 85-1606, that "It shall be the duty of the county surveyor, with the processioners, taking all due precaution to arrive at the true lines, to trace out and plainly mark the same. The surveyor shall make out and certify a plat of the same, and deliver a copy thereof to the applicant; and in all future disputes arising in reference to the boundary lines of such tract, with any owner of adjoining lands, having due notice of such processioning, such plat and the lines so marked shall be prima facie correct, and such plat, certified as aforesaid, shall be admissible in evidence without further proof." So it would seem that failure to give an adjoining landowner notice as required by law would not work a dismissal of the proceeding as to the adjoining landowners who had been given the required notice, but that such proceeding would not be binding on an owner not having due notice thereof. After the motion to dismiss because the minor children of J. H. Pearre were not given written notice of the time and place of the survey as required by law, the applicant filed a petition alleging that the minors knew of the survey, and one of them went along with the surveyor and processioners; that their father, J. H. Pearre, and their uncle, C. Clifford Rosier, were notified and were present during the survey; that while the line was being run Rosier stated that he represented these minor children; and that the applicant asked that Pearre and Rosier be appointed guardians ad litem for the minors in the proceeding then before the court, and that the minors be made parties. The court appointed guardians ad litem, after rule nisi and proper notice, and the minors were made parties. This was error. The minors were not given written notice of the processioning proceeding. If present at the time and place of the survey, they could not legally act for them-

selves. Nor were they represented by any one present who could legally act for them. Therefore they could not, over objection, be made parties to the proceeding on appeal to the superior court. However, this would not work a dismissal of the entire proceeding, but the effect would be that the proceeding and the judgment thereon would not be binding on these minors. In *Cartledge* v. *Ashford,* 152 *Ga.* 674 (110 S. E. 907), where the husband and wife were joint owners of the land, and due notice was served on the wife as an adjoining landowner, though not on the husband, but he was present and protested against the legality of the proceeding when the line was run, and was afterward present and testified in the superior court on the issue formed by the protest filed by his wife to the return of the processioners, it was held that the husband was bound by that proceeding and the judgment therein, because he could have filed a protest or intervened on the trial of the issue, had he so desired. This ruling, of course, was based on the principle that the husband was present when the line was being run, was sui juris, and could have acted for himself in the matter and protected his rights as fully as if he had been given the required written notice. The decision in *Carmichael* v. *Jordan,* 131 *Ga.* 514 (62 S. E. 810), is not applicable to the facts of the present case. It was there ruled that where the deacons of a church, who were tenants in common with the other members, made application to have a line processioned, the application was subject to be dismissed on the ground that the other owners were not named and did not join in the application, it not being shown that the applicants had been properly authorized to act for the other tenants in common.

■ 'The applicant, Wilkinson, claimed that the high-water mark of the old mill-pond site on Butler's Creek is the northern boundary of his land, and the true dividing line between his lands and the lands of the protestants. The protestants claimed that Butler's Creek is the true line between the lands of said parties. It seems that this old mill-pond had been in existence for many years, probably as far back as 1829, and that it continued to exist until the dam broke and the water left the pond site. Wilkinson's tract of land, consisting of 582½ acres, was conveyed to him by Mrs. Ann H. Jones in 1931, and was described as bounded on the north by property of Clifford Rosier and Freeman Rosier, and sep-

arated from it by the high-water mark on the north side of Butler's Creek. This same tract of land was conveyed to Mrs. Ann H. Jones by Allen W. Jones on November 6, 1900, the deed stating that it conveyed the "mill-pond, dam, mill-site, and water-power situate thereon." The documentary evidence introduced by the plaintiff, consisting of deeds and plats for many years back, indicated and showed that the northern boundary line of Wilkinson's tract, this being the line in dispute, was the high-water mark of the old pond on the north side of Butler's Creek. It also appeared from the evidence that the three tracts of land owned by the protestants were acquired by them under the will of their father, John Milledge Rosier, dated May 3, 1919. This will devised a 33-acre tract to C. Clifford Rosier, and described it as being bounded on the south (this being the line in dispute) by the mill-pond. Mrs. Ollie Pearl Beck's tract contained 34 acres, and was bounded on the south by a swamp. The Pearre tract consisted of 46 acres, and was bounded on the south by a swamp or pond. The beginning place of this survey was at the water-mark on the mill-dam, this being at a point four feet below the top of the dam, where the water used to stand when the pond was there, and this mark or place of beginning was pointed out by Clifford Rosier and Freeman Rosier, and was agreed to by all the parties. This was testified to by Wilkinson, and by the surveyor, the three processioners, and other witnesses, but it was denied by Clifford Rosier in his testimony. There was evidence to the effect that at the time the survey was made the water-mark of the mill-pond could still be seen; that is, that there were physical signs and evidence at that time, indicating where the water-mark used to be, and that the surveyor and processioners followed the water-mark line around the contour of the mill-pond site in making their survey. "In all cases of disputed lines the following rules shall be respected and followed: Natural landmarks, being less liable to change, and not capable of counterfeit, shall be the most conclusive evidence; ancient or genuine landmarks, such as corner station or marked trees, shall control the course and distances called for by the survey. If the corners are established, and the lines not marked, a straight line, as required by the plat, shall be run, but an established marked line, though crooked, shall not be overruled; courses and distances shall be resorted to in the absence of

higher evidence." Code, § 85-1601. The county surveyor testified, in part: "Then we ran out the level line from that and we put stakes at each of these points. If this initial point was correct, if that was right, and that was agreed on as being right, the rest is a matter of surveying, but the rest had to follow as a consequence of it, couldn't help it, the line had to be there, no other way out. This is merely tracing the water level. Water seeks its level. That is merely putting stakes where that level surface would come." Also: "As county surveyor I was called on by the processioners to make the survey between the Rosiers and Wilkinson. When I first began to make the survey I wanted to find a point on the dam where I would begin, in order to find the water-level. We made an examination of the ground. We were trying to locate, if possible, the water-marks along the dam. There was no definite water-mark there, nothing that anybody could swear to as being absolutely the water-mark, but there were indications of what were probably the water-mark, and that elevation was agreed to by all parties concerned before we started anything at all."

There was abundant evidence to support the contentions of the applicant that the water-mark of the old mill-site was the northern boundary line of his land, and that the surveyor and the processioners followed this line in making their survey. But the protestants claimed that Butler's Creek was the southern boundary line of their lands and the true dividing line between the lands of the parties; that the mill-pond had not been in existence for about twenty-five years; that they and their predecessors in title had been in possession, under a claim of right, of the land between Butler's Creek and the line set up by the surveyor and processioners for twenty-five years, and had pastured this land and cut timber thereon for twenty or twenty-five years; that Butler's Creek was agreed on by the predecessors in title of the parties as the dividing line between their respective tracts of land, after the mill-pond broke, and that this line had been acquiesced in by the predecessors in title of the applicant for more than seven years by acts and declarations. "When a line has been located by an executed parol agreement between the coterminous proprietors, or established by seven years acquiescence as provided by the Civil Code, § 3247 [1933, § 85-1602], the line thus located and established is binding on the grantees of the coterminous proprietors."

*Osteen* v. *Wynn,* 131 *Ga.* 209 (4) (62 S. E. 37, 127 Am. St. R. 212); See also *Wood* v. *Crawford,* 75 *Ga.* 733; *Carstarphen* v. *Holt,* 96 *Ga.* 703 (23 S. E. 904). "Acquiescence for seven years, by acts and declarations of adjoining landowners, shall establish a dividing line." Code, § 85-1602. In a processioning proceeding the surveyor and processioners have no authority to make and establish new lines, but their duty is to trace and mark anew old lines or those that can be taken as having been formerly located and established. "Where actual possession has been had, under a claim of right, for more than seven years, such claim shall be respected, and the lines so marked as not to interfere with such possession." § 85-1603. Most of the land in dispute was swamp land; and there was evidence on the part of the defendants that they had pastured this land and cut timber from it for about twenty-five years; they had not cultivated any of the land where the old pond was, but for a great number of years, even while the pond was there and before the waters receded, they had cultivated land below the line the processioners ran. This was testified to by Clifford Rosier. He testified also that he did not agree that the starting place of this survey was the water-mark of the old pond, or that the survey followed it. Some of the witnesses for the applicant, who had been familiar with the mill-pond for many years, testified that they remembered where the water backed up to on the field, and that the water-mark of the pond was about where the surveyor and processioners located the line. The surveyor testified that he remembered that while they were making the survey the Rosiers said that they were following the old waterline. He further testified: "What happened then was that we ran out that line. We established the flow line the first day. That was the line that they were interested in and what the processioners should determine as the property line. That line was located and passed on by the processioners. . . Now all this was on the first day there with the processioners. That was the property line that was to be passed on by the processioners." One of the processioners testified that when running the disputed line their attention was not called to any possession of the land by the protestants. It was held in *McCook* v. *Crawford,* 114 *Ga.* 337 (2) (40 S. E. 225): "Continuous use and occupancy for the time required by law for the purpose of range for cattle and hogs,

and repeated occupation for the purpose of cutting timber, will not alone amount to actual possession of lands, within the meaning of the law declaring that adverse possession of lands, accompanied by written evidence of title, for seven years will ripen into a perfect legal title. And this is true though the lands are so situated as to be unfit for actual physical residence and unfit for cultivation, and suitable only for the purposes above named." The evidence referred to herein is by no means all of the evidence that was introduced on the trial, but is sufficient to show why the processioners fixed the line as the true line between the parties, and is also sufficient to show that the jury was authorized to render a verdict in favor of the applicant on the issues involved.

■ A special ground of the motion for new trial complains that the court (after charging the jury "that if you believe from the evidence that the high-water mark of the pond was originally the correct line, but that the dam broke, and that these defendants, or either of them such as there may be, or more, went in possession of that land under a claim of right, and that continued for seven years, then the run of the creek would be the line, and in that event you would find for the defendants. Where actual possession has been had under a claim of right for more than seven years, such claim shall be respected and the lines run by the processioners so marked as not to interfere with such possession. I charge you that mere naked possession, with no intention of asserting ownership, is not such actual possession under claim of right as the law contemplates. So . . if you should believe from the evidence that the defendants, even though you found that the original line was the high-water mark of the pond, but that these defendants, or any one of them, went in possession of that land there, with the intention of asserting ownership and went into actual possession under claim of right, and that continued for seven years, then in that event you would find for the defendants") erred in charging further: "However, if you believe they went in possession and that the high-water mark of the pond was the original line, but that it was mere naked possession with no intention of asserting ownership, then on that phase of the case you would find for the plaintiff, if you believe the evidence shows those to be the facts on that phase of the case." It is contended that the last-quoted part of the charge was contrary to the

preceding part, nullified it, and was contrary to law and without evidence to support it. The portion of the charge objected to stated a correct principle of law, and was appropriate under the evidence introduced, and this ground of exception is without merit. "Mere naked possession, with no intention of asserting ownership, is not such actual possession under a claim of right as is contemplated by the Civil Code, § 3248" (1933, § 85-1603). *Riddle* v. *Sheppard,* 119 *Ga.* 930 (4) (47 S. E. 201); *Norman* v. *Smith,* 131 *Ga.* 69 (4), 72 (61 S. E. 1039). From what has been said it follows that the court did not err in overruling the motion for new trial.

The judgment is *affirmed* on condition that it be amended by striking from it the names of the minors, Charles Pearre, Annie Pearre, Glorise Pearre, Adelle Pearre, Vera Pearre, and Dorothy Pearre. Otherwise, the judgment will, stand *reversed. Jenkins, P. J., and Stephens, J., concur.*