41733.   CARTER v. WYATT et al.
41734.   CARTER v. FREEMAN et al.

Argued January 11, 1966—Decided January 28, 1966—Rehearing denied March 3, 1966.

Richter & Birdsong, A. W. Birdsong, Kelly, Champion & Henson, John W. Denney, J. Norman Pease, Forrest L. Champion, for appellant.

Loeb C. Ketzky, H. T. Quillian, Jr., Sims & Lewis, James R. Lewis, for appellees.

EBERHARDT, Judge. ■ "An unascertained or disputed boundary line between coterminous proprietors may be established either (1) by oral agreement, if the agreement be accompanied by actual possession to the agreed line or is otherwise executed; or (2) by acquiescence for seven years, by acts or declarations of owners of adjoining land, as provided by the Code, § 85-1602." *Bradley v. Shelton*, 189 Ga. 696 (4) (7 SE2d 261). We are not concerned with any oral agreement, for there is no evidence of any as to any line.

It is contended, however, by protestant that there was acquiescence for more than seven years in the old fence as the line. If there was, of course applicant is bound by it.

The establishment of a line by acquiescence can be accomplished only by the acts or declarations of *both* adjoining owners. *Ivey v. Cowart*, 124 Ga. 159 (4) (52 SE 436, 110 ASR 160); *Cassels v. Mays*, 147 Ga. 224 (93 SE 199); *Tietjen v.*

*Dobson*, 170 Ga. 123 (4) (152 SE 222); *Southern Timber Co. v. Bland*, 32 Ga. App. 658 (2) (124 SE 359). It must appear that as to the line sought to be established by a coterminous owner his claim of it as a line must have been made known to the adjoining owner, for "[o]ne cannot acquiesce in something of which he has no knowledge." *Dixon v. Dixon*, 97 Ga. App. 54, 58 (102 SE2d 74). See also, *Robertson v. Abernathy*, 192 Ga. 694, 697 (16 SE2d 584).

Consequently, the fact that protestants had *claimed* the old fence as the dividing line for more than seven years, or even for more than 20 years, without a showing that the claim was made known to the adjoining owner, could not establish it as the line. We find no evidence in this record that the claim was made known until just prior to the institution of the processioning proceedings. Nor do we find any evidence that the protestants or their precedessors in title performed any act or made any declaration concerning the fence as a dividing line that could be said to have brought that matter to applicant's attention.

We find no evidence of any act of the applicant in recognition of the fence as the line unless it be in the testimony of Allen. He testified that his father had been employed by Mr. Carter (applicant) to erect a fence across the bottoms, from the river to the wooded area. In 1940, when he was about 16 years old, he and his brother assisted the father in putting in the fence, which "separates the two places," and that in addition to building the fence through the bottoms they rebuilt or repaired for a considerable distance an old fence to which it joined into the area. He did not know whether the old fence had been a pasture fence or not, but it was crooked and took different positions. As to the matter of the fence as a dividing line between the Carter and Freeman places he testified: "I guess it separates the two main points down there at the river." His father and his brother have since died. The line through the river bottoms along the fence which the Allens erected was not in dispute. Consequently, it resolves to the matter of whether the repairs to the old fence which Allen says were made, amount to an act or declaration of recognition of the old fence as the dividing line. We cannot so construe the evidence. It was applicant's

testimony that the old fence was not on any land line, but was an old pasture fence.

That protestants may have sold and caused the timber to be cut up to the old fence is not alone a sufficient act or declaration to establish it as a dividing line by acquiescence. *McCook v. Crawford,* 114 Ga. 337 (2) (40 SE 225); *White v. Gordon,* 213 Ga. 730, 733 (101 SE2d 759); *Pearre v. Wilkinson,* 54 Ga. App. 638, 645 (188 SE 553); *Dixon v. Dixon,* 97 Ga. App. 54, 57, supra. And see *Southern Timber Co. v. Bland,* 32 Ga. App. 658 (4), supra. In connection with their testimony relative to a sale of the timber (some 10 years previously.) the Freemans asserted that they had no discussion about the matter with Mr. Carter. Mr. Carter testified that he was on the land infrequently since he had purchased it in 1937, particularly in the disputed area, and had known nothing of the cutting of the timber until shortly prior to the institution of this proceeding.

The verdict for the line of protestants is not consistent with and cannot be grounded upon any established principle of law and must fall under the attack of the general grounds in the motion for new trial.

■ The court charged that the jury should return a verdict finding in favor of the applicant or of the protestants. Appellant contends that it was error, since a third verdict, simply finding against the applicant, was possible under the evidence, citing *McCollum v. Thomason,* 33 Ga. App. 160 (122 SE 800); *Payne v. Green,* 84 Ga. App. 689, 694 (67 SE2d 195); *Boyd v. Hill,* 94 Ga. App. 686 (96 SE2d 222).

If all of the evidence supports a finding for the applicant or for the protestant, the charge as given was without error. *McGinty v. Interstate Land &c. Co.,* 92 Ga. App. 770, 772 (90 SE2d 42). But if the evidence supports neither of the lines, or if it tends to support another line as being the true one, the charge should have included the possibility of a third verdict. *Fraser v. Kichline,* 108 Ga. App. 701, 703 (134 SE2d 492). Under our view of the evidence, the line contended for by protestants not having been established by acquiescence, and there being some conflict in the testimony as to the markings on the line contended for by the applicant, a third ver-

dict could have been rendered leaving the parties where they were, and the jury should have been properly instructed as to that.

■ Appellant assigns error upon the charge relative to the burden of proof, simply stating that it rested upon the plaintiff to make out his case, and urging that the introduction of the return of the processioners made out his prima facie case, shifting the burden to the protestants to establish the line as contended for by them. It did shift the burden of going forward with the evidence in resisting the return and of proving their contentions as to the line for which they contended. There was no request for a further charge on the matter of the burden of proof, however, and we find no error in this respect. *Ray v. Dixon,* 106 Ga. App. 470 (2) (127 SE2d 309).

■ Error is assigned upon the omission of "the nature of the facts to which the witnesses testified and the reasonableness of their testimony," and adding "their bias or prejudice, if any appears," in the charge on the matter of where the preponderance of the evidence lies. While it is better to charge on this matter in the language of *Code* § 38-107, yet the courts should not be so straight-jacketed in this respect as to hold that any variation is error. *Fountain v. McCallum,* 194 Ga. 269 (21 SE2d 610). Before it is held to be error it should appear that the omission or addition was for a particular reason harmful. That does not appear.

■ The charge is urged to be erroneous because the court did not include (without request therefor), in connection with its instruction relative to the matter of acquiescence, an instruction that an essential element is knowledge, on the part of the party to be charged with acquiescing, of the claim of the adjoining owner as to the location of the dividing line. While it would have been a proper charge if made, yet in the light of the whole charge on this matter we do not think it was error to omit it, there having been no request therefor. Acquiescence was defined as meaning "to rest, to submit without opposition or question, to yield assent," and we cannot see how this could be applied without a conclusion of knowledge on the part of him who is to be charged with acquiescence. The language, of necessity,

includes it. One does not yield, submit or assent to a matter unless he knows about it. The jury was instructed that acquiescence, to be effective in the establishment of a dividing line, must have been on the part of both the applicant and the protestants.

■ The court charged that if adjoining property owners deliberately erect monuments or fences or make improvements on a line between their lands, *upon the understanding that it is the true line,* it will amount to a true location. This is urged as being erroneous because nothing in the evidence supports any agreement or understanding between the parties, or their predecessors in title, that the fence was on the true line. With this contention we must agree. A careful search of the record discloses no evidence as to who may have erected the fence, as to when it may have been erected, or as to any agreement or understanding on the part of the adjoining owners—at the time the fence was erected or at any subsequent time—that it was located on the true dividing line between them.

The case of *Henderson v. Walker,* 157 Ga. 856 (1) (122 SE 613), from which this charge was lifted, does not require a different conclusion. In that case the fence was erected pursuant to an agreement or understanding to have the line located by a survey, and it was erected upon the line as determined by the survey. There was cultivation up to the fence thereafter for more than seven years. In that context the court observed that the charge, similar to that here dealt with, "is not open to the criticism that there was no evidence that any agreement had ever been entered into between the coterminous owners, which had become executed." *Henderson v. Walker,* supra, at p. 862.

■ We have examined appellant's several other enumerations of error relating to the processioning case and find them to be without merit.

■ *The motion to strike names of counsel, and the matter of attorneys' fees.*

This matter was initiated by the motion of Mr. Carter to strike from the docket and record the names of attorneys who had, in the trial of the processioning case, been his counsel and

to substitute the names of others. The attorneys whose names he sought to have stricken then filed a motion for an order directing that he pay to them the full amount of fees which they contended he had agreed to pay, or secure them therefor, and in default thereof objected to the striking of their names. To this motion Mr. Carter filed a plea to the jurisdiction, traversed and moved to quash the service, and demurred generally. The plea, motion and demurrer were overruled, and an order was entered directing Mr. Carter to pay to his counsel the full amount of fees contended for by them before their names were stricken, and the court refused to recognize as his counsel others whom he sought to substitute.

The motion to strike the names of counsel was made in connection with the case already pending. The motion for an order to require full payment of fees was likewise made in connection with the same case, as were the plea to the jurisdiction, the motion to quash service and the demurrer. They are designated and treated an ancillary motions, etc.—not as a new, separate and distinct case, and in that we think counsel were and are correct. It is sufficient if these were served upon the opposite party or his attorney. Code § 81-301. The motion and objections of the attorneys were served upon a member of the law firm which Mr. Carter sought to have substituted as his counsel, which had filed in his behalf a motion for new trial and which represents him in this appeal. We think the service was good. Denial of the plea to the jurisdiction and the motion to quash was proper.

The motion was not subject to general demurrer. *White v. Aiken,* 197 Ga. 29 (28 SE2d 263). There was no error in overruling it.

But pretermitting all of these matters, and the matter of whether the orders should not have been entered because the filing of the motion for new trial amounted to the institution of a new action under the practice prevailing prior to the adoption of the Appellate Practice Act of 1965, or because Mr. Carter's counsel in the processioning case had abandoned it by returning to him the documentary evidence, etc., and informing him that pursuing a motion for new trial would be useless and fruitless

in their judgment, or because there was no recovery upon which Mr. Carter's counsel could have a lien for their fees, since the processioning case had been lost, there is another reason why entry of the order requiring full payment of the claimed fees was error.

It is well settled that a client may discharge his attorney for any reason, however arbitrary, dismiss his suit or settle it to his own satisfaction and that his action in doing so is not a breach of the contract of employment, but an exercise of his right. *Dorsey v. Edge*, 75 Ga. App. 388, 392 (43 SE2d 425). The dismissal, however, cannot defeat the attorney's right to compensation, and it has been held that his name should not be stricken as counsel, over objection, unless he has been fully paid or has been made secure as to his fee. *White v. Aiken*, 197 Ga. 29, supra. The offer to pay the full amount of the fee claimed into the registry of the court, there to await the verdict of a jury as to what amount was owed by applicant to his counsel, was a sufficient means of securing them for their fees. This is particularly true since there was a dispute between applicant and his counsel as to what the fee arrangement had been, raising a question that could be settled only by the verdict of a jury. The court had no power to determine it. The case of *White v. Aiken*, 197 Ga. 29, supra, does not require a different conclusion.

*Judgments reversed. Bell, P. J., and Jordan, J., concur.*